Santiago **VALDERRAMA–FONSECA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 95–70681.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 1997.

Decided June 24, 1997.

Robert J. Hendricks (argued), and Jason H. Wilson, Morgan, Lewis & Bockius, Los Angeles, CA, for petitioner.

Edward J. Duffy, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for respondent.

Before: HUG, Chief Judge, and FERNANDEZ and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Santiago Valderrama–Fonseca's petition for review of an order of deportation based on his 1985 burglary conviction requires us to decide whether we have jurisdiction in light of § 440(a) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. 104–132, 110 Stat. 1214, 1276 (1996), which precludes judicial review of final orders of deportation against aggravated felons, and § 321 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Div. C of Pub.L. 104–208, 110 Stat. 3009—__, 3009—__, (1996), which classifies Valderrama's burglary conviction as an aggravated felony. We hold that we have jurisdiction over this petition because the aggravated felony amendments of IIRIRA § 321(a) apply only to actions taken after IIRIRA's date of enactment (September 30,

1996), IIRIRA § 321(c), and all "actions taken" in this matter—except for this court's, which we conclude do not count—occurred before that date. As the merits of Valderrama's appeal are easily resolved in the Service's favor, we deny the petition for review.

## I

The INS initiated deportation proceedings against Valderrama on October 4, 1989 by ordering him to show cause why he should not be deported for having entered the United States illegally. The Immigration Judge held an *in absentia* hearing and found Valderrama deportable as charged. On November 13, 1991, the BIA remanded the case to the Immigration Judge to allow Valderrama a chance to demonstrate reasonable cause for his failure to appear at the deportation proceeding.

On January 24, 1992, the Immigration Judge reopened Valderrama's deportation proceedings. The INS lodged two additional charges, alleging that Valderrama was also deportable for having overstayed a visitor's visa in 1982 and for having been convicted of a crime of moral turpitude within five years of entry as a result of his burglary conviction on July 1, 1985, for which he was sentenced to two years imprisonment. On June 29, 1993, the Immigration Judge found Valderrama deportable for having been convicted of a crime of moral turpitude and denied his request for discretionary relief from deportation.

On July 15, 1993, Valderrama appealed to the BIA. On June 9, 1995, the Board affirmed the Immigration Judge's decision. Valderrama timely filed a petition for review in this court on September 7, 1995.

## II

■ The INS argues that because AEDPA § 440(a) precludes judicial review of final orders of deportation for aggravated felons,[1] and Valderrama's burglary conviction is an aggravated felony under IIRIRA § 321(a)(3), we lack jurisdiction. There is no question that IIRIRA § 321(a)(3) makes any burglary offense for which the sentence of imprisonment is at least one year an aggravated felony, *see* 8 U.S.C. § 1101(a)(43)(G), and that under that definition, if applicable, Valderrama's burglary conviction is an aggravated felony. *Abdel–Razek v. INS*, 114 F.3d 831, 832 (9th Cir.1997). There also is no question that AEDPA § 440(a) bars judicial review of final orders of deportation against aggravated felons, and that it applies to petitions pending on the date of the AEDPA's enactment. *See Duldulao v. INS*, 90 F.3d 396, 399–400 (9th Cir.1996). However, the parties disagree about whether the IIRIRA "aggravated felony" amendments are triggered in this case, so we must decide when those amendments are effective.

IIRIRA is a difficult statute to construe for many reasons, not the least of them being that different sections and subtitles have distinct, and different, provisions for effective dates. The "aggravated felony" amendments are part of Title III, subtitle B (Criminal Alien Provisions). *See* 1996 U.S.C.C.A.N. 1570, 1572.[2] Section 321 is the section that amends the definition of "aggravated felony." The definition itself is set out in § 321(a). Section 321(b) establishes the effective date of the *amended definition:*

> (b) EFFECTIVE DATE OF DEFINITION.—Section 101(a)(43) (8 U.S.C. § 1101(a)(43)) is amended by adding at the end the following new sentence: "Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph."

---

1. Codified at 8 U.S.C. § 1105a(a)(10), AEDPA § 440(a) provides:
   Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2) ... (C) [aggravated felony] ... shall not be subject to review by any court.
   IIRIRA § 306 repeals 8 U.S.C. § 1105a(a)(10) and recodifies it in virtually identical language at

8 U.S.C. § 1252(a)(2)(C), but is effective only to final orders of deportation entered after September 30, 1996. *See* IIRIRA § 306(c) (effective date), *reprinted in* 1996 U.S.C.C.A.N. 1570, 1675.

2. IIRIRA is Division C of Pub.L. 104–208 and is divided into five titles.

IIRIRA § 321(b), *reprinted in* 1996 U.S.C.C.A.N. at 1702. However, the effective date of *the amendments made by the section* is determined by § 321(c):

> (c) EFFECTIVE DATE.—The amendments made by this section shall apply to *actions taken* on or after the date of the enactment of this Act, regardless of when the conviction occurred, and shall apply under section 276(b) of the Immigration and Nationality Act only to violations of section 276(a) of such Act occurring on or after such date.

IIRIRA § 321(c), *reprinted in* 1996 U.S.C.C.A.N. at 1702 (emphasis added).

Thus, while it is clear that it doesn't matter when the conviction occurred if the IIRIRA "aggravated felony" amendments apply, it is not clear that those amendments apply. It is clear enough that they apply to "actions taken" after September 30, 1996, but neither the text nor the legislative history defines the "actions" that, if "taken," trigger the applicability of IIRIRA § 321.

At least three possibilities occur (not mutually exclusive). One is to say that "actions taken" refers to orders and decisions issued against an alien by the Attorney General acting through the BIA or Immigration Judge. This makes logical and practical sense, as "actions taken" is easily understood to encompass things done by an agency to an alien.[3] All such actions in this case—except for one which is not before us—were taken before IIRIRA's date of enactment.[4] Another possibility is that "actions taken" refers to steps by the alien, such as applying for discretionary relief or petitioning for review of the BIA's decision. The word "actions" appears to be used in this way elsewhere in IIRIRA,[5] but we need not worry about whether an alien's actions alone suffice to trigger § 321(c), and thus to deprive us of jurisdiction, because all actions taken by Valderrama (including his petition for review in this court) were taken before IIRIRA's date of enactment. A third possibility is the INS's preferred construct that "actions taken" means any action by anyone, including this court. While the suggestion is not untenable, as courts do act, it seems implausible; it would mean that our jurisdiction would depend on when we got around to hearing a particular petition and to taking the action that would be an "action taken" within the meaning of § 321(c). Thus, in this case, we could have considered Valderrama's petition at any time between September 7, 1995 and September 30, 1996, and had we done so, under the INS's interpretation, we would have had jurisdiction, whereas now we don't simply because the petition did not percolate up on our calendar. Also, it is more natural to think of courts of appeals as reviewing "actions taken" by others. Finally, it is apparent that Congress knew how to make provisions of IIRIRA applicable to pending proceedings when it wanted to,[6] and not having done so in terms in § 321(c), we hesitate to read retroactivity into the effective date provision itself.

The INS submits that because the second clause of § 321(c) plainly provides for no ex post facto application of the amended definition in the case of prosecutions for illegal reentry after an aggravated felony, the first clause must have been intended to have retroactive application. But this does not necessarily follow, for the tenor of the effective

---

3. This interpretation is consistent with how the word "actions" is used in the context of jurisdiction in the Immigration & Nationality Act, 8 U.S.C. § 1252(g), which provides that in the absence of an express grant of jurisdiction, no court has jurisdiction over any "decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."

4. Subsequent to the filing of his petition for review, Valderrama moved to reopen his deportation proceedings so that he could apply for adjustment of status. The Board denied the motion, and Valderrama failed timely to file a petition for review of the BIA's decision.

5. *See, e.g.,* IIRIRA § 309(c)(4)(A), *reprinted in* 1996 U.S.C.C.A.N. at 1699 (referring to an "action for judicial review").

6. *See, e.g.,* IIRIRA § 348(b) (Waivers for Immigrants Convicted of Crimes) ("The amendment made by subsection (a) shall be effective on the date of enactment of this Act and shall apply in the case of any alien who is in exclusion or deportation proceedings as of such date unless a final administrative order in such proceedings has been entered as of such date.").

date provision is to make the aggravated felony amendments applicable to anything done by the Attorney General after the effective date (without regard to when the conviction occurred) except for what is done solely on account of the alien's re-entering the country—which the alien could presumably decide not to do if he constructively knows that it will subject him to deportation without judicial review.

We therefore conclude that the gateway to IIRIRA's aggravated felony amendments has not been opened in this case. No actions taken after IIRIRA's date of enactment trigger the "aggravated felony" amendments of IIRIRA § 321. Since the "aggravated felony" IIRIRA amendments do not apply, we are not required to characterize Valderrama's burglary conviction as an "aggravated felony," so as to divest ourselves of jurisdiction under AEDPA § 440(a). Having jurisdiction, we turn to the merits.

### III

Valderrama contends that the BIA should have remanded his case to the Immigration Judge to allow him an opportunity to apply for adjustment of status, because while his appeal to the BIA was pending, an omnibus appropriations bill, Pub.L. 103–317, 108 Stat. 1765 (1994), was enacted, section 506(b) of which amended INA section 245(i) (8 U.S.C. § 1255(i)) to permit aliens who entered the United States illegally to apply for adjustment of status, provided they pay five times the normal filing fee. Valderrama did not ask the BIA for leave to file for adjustment of status under the new law, but he now argues that under 8 C.F.R. § 242.17[7] the BIA was compelled *sua sponte* to remand the case to the Immigration Judge to allow him to apply for this relief. We disagree.

The Immigration Judge did not err in failing to advise Valderrama of the availability of adjustment of status because Pub.L. 103–317 had not yet been enacted when he ordered Valderrama deportable. The regulation 8 C.F.R. § 242.17 imposes no independent requirement on the BIA to identify the types of relief for which an alien might be eligible and to remand to the Immigration Judge in the event that it finds any. When intervening law renders an alien eligible for discretionary relief for which he was ineligible at the time of his deportation hearing, the proper remedy is for the petitioner to ask the BIA either for leave to apply for such relief or for a remand to the Immigration Judge so that he may file his application, or in the event that the Board has ruled on the alien's appeal, to file a motion to reopen.

We know that these options would be futile in Valderrama's case, because he did ask the Board to reopen and it denied the request. As no timely appeal was taken, that ruling is final.

### IV

Valderrama also contends that the Immigration Judge committed reversible error by mentioning a conviction that had been expunged by the Federal Youth Corrections Act, 18 U.S.C. § 5021(b). However, we decline to consider the point, since Valderrama failed to present it first to the BIA. *See Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir.1994).

PETITION DENIED.

---

7. 8 C.F.R. § 242.17 provides that "[t]he immigration judge shall inform the respondent of his or her apparent eligibility to apply for any of the benefits enumerated in this paragraph [suspension of deportation and adjustment of status] and shall afford the respondent an opportunity to make application therefor during the hearing."