**Truong Thanh TAM, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. Civ. S–98–183 FCD GGH P.**

United States District Court, E.D. California.

Aug. 11, 1998.

Quin Denvir, Fed. Defender, Daniel J. Broderick, Asst. Fed. Defender, Richard A. Cohen, Sacramento, CA, for Petitioner.

Paul L. Seave, U.S. Atty., Glyndell E. Williams, Special Asst. U.S. Atty., Sacramento, CA, H. Bradford Glassman, Office of Immigration Affairs, Washington, DC, for Respondent.

1. Absent the need for further briefing or factual development, the magistrate judge stated his intention to submit the Order of May 26, 1998, as his findings and recommendations on the merits of petitioner's application for writ of habeas corpus. (Order at 2)

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Respondent Immigration and Naturalization Service (the "INS" or "government") seeks review of an order releasing Petitioner Truong Thanh Tam ("Truong" or "petitioner") from INS custody pending a ruling on Truong's petition for a writ of habeas corpus. The order releasing Truong on conditions was entered by United States Magistrate Judge Gregory G. Hollows on May 26, 1998, and stayed pending this court's ruling on the government's Motion for Reconsideration.

The court deems the Order of May 26, 1998, to be the magistrate judge's finding and recommendations concerning petitioner's application for release pending resolution of his petition for habeas corpus.[1] For the reasons set forth below, the court adopts the magistrate judge's findings and recommendations and grants petitioner's conditional release pending resolution of his petition for habeas corpus. The government's motion for reconsideration is denied as moot, and the government's request for a stay pending appeal of this Order is denied.

## FACTUAL BACKGROUND

Petitioner is a native and citizen of Vietnam. He arrived in the United States as a refugee on November 11, 1975. While residing in Anchorage, Alaska, he obtained lawful permanent resident status on May 23, 1978. On June 25, 1990, INS placed petitioner in deportation proceedings on the basis of two separate convictions in 1982 and 1983. On December 3, 1990, an immigration judge conducted a deportation hearing in Anchorage and ordered petitioner deported to Vietnam. Petitioner waived his right to appeal, but he was not deported.

On May 6, 1995, the Anchorage INS office assumed custody of petitioner from Alaska local authorities after petitioner had completed his sentence for forgery in the second degree and theft in the second degree.[2] He

2. Petitioner was convicted of these offenses in 1992. The record is not clear as to the period of incarceration for those offenses, but it appears likely that petitioner was imprisoned for three years and, at the conclusion of his sentence, taken into INS custody in May 1995.

was detained while INS sought necessary travel documents needed to effect his deportation to Vietnam.

Petitioner was transferred to the INS long-term detention facility in Seattle, and on February 7, 1996, the Seattle office advised petitioner's attorney that petitioner would not be released from detention due to his extensive criminal history. Petitioner continues his incarceration in Sacramento, California.

For several years, INS has sought to repatriate petitioner to Vietnam. The government of Vietnam has never responded to INS's requests and there appears little likelihood Vietnam will repatriate petitioner.

Petitioner has been in INS custody awaiting repatriation for more than three years.

## PROCEDURAL BACKGROUND

On October 3, 1997, petitioner filed a handwritten petition for writ of habeas corpus alleging that his continued detention violated due process. Petitioner's case was transferred from the District Court for the Western District of Washington to this court on January 29, 1998. The matter was referred to the magistrate judge pursuant to general order and local rule. On March 9, 1998, the government filed a motion to dismiss the petition which the magistrate judge denied by Order filed April 21, 1998. At that time, the magistrate judge scheduled a hearing to address the matter of petitioner's continued detention by the INS.

A hearing concerning petitioner's detention was held before the magistrate judge on May 7, 1998. At the hearing, the magistrate judge allowed the government ten days in which to file further briefing concerning the court's authority to release petitioner. On May 26, 1998, the magistrate judge ordered petitioner's conditional release on May 29, 1998, unless the government moved for reconsideration of the release order before the district judge. By its own terms, the Order of May 26, 1998, was stayed upon filing of the government's motion for reconsideration.

On July 10, 1998, the court held a hearing on the government's motion for reconsidera-

tion. The hearing was continued to allow the INS to consider a proposed stipulated conditional release of petitioner. On July 13, the INS rejected the proposed stipulation, but offered to conduct an expedited review of petitioner's file and, on or before July 17, 1998, issue a written decision regarding petitioner's release. The matter was continued to July 20, 1998, to allow the INS district director to conduct an expedited review and issue a written decision. On July 17, the INS' district director issued a decision refusing to release petitioner.

On July 20, 1998, the court, without objection from petitioner's counsel, ordered petitioner to undergo a psychological evaluation for the purpose of determining whether he suffered from a mental illness that would render him a danger to the community.

## ANALYSIS

### 1. Jurisdiction

Section 2241 of Title 28 of the United States Code establishes the court's authority to grant writs of habeas corpus.[3] Habeas relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

#### a. *Repeal of Habeas Jurisdiction*

■ The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, Div. C., 110 Stat. 3009–546 (enacted 9/30/96), amended the Immigration and Nationality Act ("INA") to restrict federal courts' power of judicial review over "any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g). Section 1252(g), however, does not prevent this court from exercising jurisdiction over petitioner's application for habeas corpus to the extent petitioner raises constitutional due process claims. *See Walters v. Reno*, 145 F.3d 1032

---

**3.** Section 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district court and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a).

(9th Cir.1998) (holding that procedural due process claims arising from unconstitutional INS administrative procedures were not claims arising from a "decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien"); *Felker v. Turpin,* 518 U.S. 651, 660, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (stating that congressional intent to repeal habeas jurisdiction must be express). Petitioner's habeas claim is a collateral constitutional due process challenge to his prolonged and indefinite detention and thus, not proscribed by the IIRIRA.

■ The government notes that, prior to 1996, section 106(a)(10) of the "INA" provided that "any *alien held in custody pursuant to an order of deportation* may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(1)(10) (1995) (emphasis added). This provision has been repealed, but not replaced with another provision specifically addressing custody. The amended version of 106(a)(10) provides that "[a]ny *final order of deportation* against an alien who is deportable by reason of having committed [an aggravated felony or firearms offense] *shall not be subject to review by any court.*" 8 U.S.C. § 1105a(a)(10) (emphasis added). The government acknowledges that petitioner's custody is not addressed in the deportation order. Nevertheless, the government interprets the amended provision as an indication that Congress intended to remove all district court authority to review custody decisions under habeas corpus.[4] A strict textual reading, however, does not support the government's interpretation. In amending the statute, Congress specifically addressed final orders of deportation but did not reference review of custody determinations. The INA itself does not contain a specific provision divesting this court of habeas jurisdiction in custody cases. Without a provision expressly repealing habeas jurisdiction in this context, the court must find that Congress did not intend to repeal habeas jurisdiction when custody is at issue.[5]

Section 1252(a)(2)(C) restricts federal courts' power to review final orders of removal against certain criminal aliens.[6] 8 U.S.C. § 1252(a)(2)(C); *Valderrama–Fonseca v. INS,* 116 F.3d 853, 855 (9th Cir.1997). Petitioner does not challenge the final order of removal, and resolution of his habeas petition does not require this court to review it. Moreover, § 1252(a)(2)(C) only applies to orders of deportation entered after September 30, 1996. *Valderrama–Fonseca,* 116 F.3d at 855 n. 1. Thus, § 1252(a)(2)(C) does not deprive this court of jurisdiction to hear petitioner's application for habeas relief.

Section 1226(c) requires the Attorney General to take into custody any alien who is deportable by reason of having committed an "aggravated felony" and gives her discretion to release such an alien under certain circumstances. 8 U.S.C. § 1226(c). Section 1226(e) bars judicial review of the Attorney General's exercise of discretion under § 1226, but applies only to "actions taken" after September 30, 1996. IIRIRA, Pub.L. No. 104–208, Div. C, § 321(c) (1996); *Valderrama–Fonseca,* 116 F.3d at 856. Thus, § 1226(e) proscribes this court's jurisdiction only if "actions" were

4. The government notes that the title of the provision that repealed the older version is "Elimination of Custody Review by Habeas Corpus." The new provision, however, does not mention custody.

5. Congress is expert in the process of law-making. Had it desired to repeal section 2241, or render it inapplicable to challenges to deportation orders, it would have taken the necessary steps to do so. It must be presumed that Congress was mindful of the necessity for a clear statement to that effect. Congress is presumed to "know the law." As the *Felker* Court acknowledged, Congress knows how to repeal habeas jurisdiction. Where it intends to do so, it states that intention expressly. This—as Congress is doubtless aware—is the purpose of the clear statement rule: courts do not have to resort to divining phantom or unarticulated congressional intentions to repeal habeas jurisdiction where there is statutory silence.

*Mojica v. Reno,* 970 F.Supp. 130, 160 (E.D.N.Y. 1997) (citations omitted).

6. Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C. § 1252(a)(2)(C).

taken after September 30, 1996, that would trigger § 1226(c). *Valderrama–Fonseca,* 116 F.3d at 855–56.

■ Congress did not define "actions taken," but in *Valderrama–Fonseca,* the Ninth Circuit interpreted "actions taken" to "encompass things done by an agency to an alien." *Id.* at 856. The Ninth Circuit declined to decide whether "actions taken" refers to steps taken by an alien, such as petitioning for review of a Board of Immigration Appeals' decision. *Id.; see also Choeum v. INS,* 129 F.3d 29, 37 (1st Cir.1997) (citing *Valderrama–Fonseca* and declining to decide if alien's petition for review qualified as "action taken"); *but see Mendez–Morales v. INS,* 119 F.3d 738 (8th Cir.1997) (per curiam) (finding that judicial review by court qualifies as "action taken"). The court declines to interpret petitioner's application for habeas relief or the court's assertion of jurisdiction as an "action taken." To do so would mean that federal courts were divested of jurisdiction by an alien's application for relief or a court's assertion of jurisdiction, a result this court finds implausible. *See Valderrama–Fonseca,* 116 F.3d at 856. Section 1226(e) does not proscribe this court's jurisdiction over petitioner's application for habeas relief.

### b. *Exhaustion Doctrine*

■ The government urges the court to dismiss the habeas petition or defer ruling on any matter raised by petitioner so that petitioner can appeal his denial of parole by the district director thereby exhausting administrative remedies. *See* Procedures for the Detention and Release of Criminal Aliens by the I.N.S. and for Custody Redeterminations by the Exec. Office for Immigration Review, 63 Fed.Reg. 27441, 27449–50 (1998) (effective June 18, 1998) (to be codified at 8 C.F.R. Pts. 3 & 236).[7] "Of 'paramount importance' to any exhaustion inquiry is congressional intent. Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v.*

*Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Here, Congress has not specifically mandated exhaustion before judicial review of custody determinations. Nevertheless, the government argues that the court should require petitioner to exhaust his administrative remedies for prudential reasons, even if failure to exhaust would not deprive the court of jurisdiction. The court disagrees. Petitioner does not seek redress for a procedural error made by the INS during the deportation proceedings or petitioner's detention.[8] The Ninth Circuit has stated that when a habeas petitioner's Fifth Amendment claim "does not implicate the INA, let alone involve review of an order of deportation or exclusion, we conclude that he was not statutorily required to exhaust his administrative remedies prior to seeking judicial relief of the violation of his due process rights." *Wang v. Reno,* 81 F.3d 808, 814 (9th Cir.1996). As this petitioner seeks vindication of substantive due process rights, exhaustion would not serve to protect the administrative agency's authority or preserve judicial efficiency. Moreover, petitioner's constitutional interests weigh heavily against requiring him to exhaust administrative remedies. *See Wang,* 81 F.3d at 814–15. Thus, jurisdiction is not foreclosed by petitioner's failure to exhaust administrative remedies.

### 2. District Court's Authority to Release A Deportable Alien

■ The authority of the district court to order petitioner's release is clear. *See Walters v. Reno,* 145 F.3d 1032 (9th Cir.1998) (holding that district court order releasing aliens was "a necessary and permissible component" of injunctive relief); *Zadvydas v. United States,* 986 F.Supp. 1011 (E.D.La. 1997). Cases cited by the government that purportedly limit the court's authority are not persuasive. For example, *In the Matter of Ghalamsiah,* 806 F.2d 68 (3d Cir.1986), teaches that, under former § 1252(c) of Title 8 of the United States Code, "the Attorney

---

7. The new rules are discussed briefly *infra* at note 11.

8. Petitioner states a claim for a violation of his constitutional rights. The Bureau of Immigration Appeals does not have jurisdiction to adjudi-

cate constitutional issues except where the claim involves a procedural error correctable by the administrative tribunal. *Wang v. Reno,* 81 F.3d 808, 814 n. 7 (9th Cir.1996). Petitioner alleges no error arising from the deportation proceedings or former custody review.

General ... has the exclusive discretionary authority to release on bail an alien, *not illegally detained,* pending a motion to reopen the deportation proceedings, subject to review of the district court." [9] (Emphasis added.) The government also cited *Marczak v. Greene,* 971 F.2d 510 (10th Cir.1992), a case involving review of a district director's decision denying parole to *excludable* aliens who had entered the country illegally. In the instant case, petitioner was a legal resident of the United States, and moreover, the court is not reviewing directly a decision of a district director, but is resolving a much broader question of constitutional dimension.

### 3. Release of Petitioner Pending Resolution of Application for Habeas Corpus

■ Bail is appropriate pending a decision in a habeas case "only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Landano v. Rafferty,* 970 F.2d 1230, 1239 (3rd Cir.1992) (quoting *Calley v. Callaway,* 496 F.2d 701, 702 (5th Cir. 1974)); *see also Land v. Deeds,* 878 F.2d 318, 319 (9th Cir.1989) ("Bail pending a decision in a habeas case is reserved for extraordinary cases involving special circumstances or a high probability of success.").

■ The magistrate judge found that "petitioner possesses a very strong likelihood of prevailing on the merits" of the habeas action. Finding "extraordinary circumstances present in this case involving the inability to deport a deportable alien," and that petitioner would not pose a danger to the community, the magistrate judge ordered petitioner released on conditions.

#### a. *Substantial Constitutional Claim*

Petitioner has a substantial constitutional claim concerning his indefinite detention

pending deportation. Under the Constitution, control over matters of immigration and naturalization are vested in the political branches of government. U.S. Const. art. I, § 8, cl. 4. Congressional power over these matters is of a political nature and subject to limited judicial review. *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). In exercising its power, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz,* 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). Congress, however, may not disregard the constitutional rights of aliens to life, liberty, and property without due process of law. *Id.* at 77, 96 S.Ct. 1883. "The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogeneous legal classification." *Id.* at 78, 96 S.Ct. 1883. The Supreme Court has consistently recognized that:

> [O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category.

*Leng May Ma v. Barber,* 357 U.S. 185, 187, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958) (quoting *Shaughnessy v. Mezei,* 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953)).

■ In some respects, aliens seeking admission to the United States and legal aliens who are subject to deportation are treated differently under the Constitution. Unlike petitioner, aliens who seek admission to the United States ("excludable aliens") have no procedural due process rights regarding admission.[10] *Barrera–Echavarria v.*

---

9. In any event, *Ghalamsiah* has little relevance to this case. When petitioner was detained in 1995, he was not an "aggravated felon" as defined by the INA, and he was entitled to be released six months after his detention, or in November 1995. Thus, it appears that petitioner is being held illegally. See the magistrate judge's discussion at pages 11–12 of the Order of May 26, 1998.

Petitioner has not moved to reopen his deportation proceedings.

10. Excludable aliens are "deemed under the entry doctrine not to be present in the United States territory." *Barrera–Echavarria,* 44 F.3d at 1448, 1450.

*Rison,* 44 F.3d 1441, 1449 (9th Cir.1995); *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). Excludable aliens also lack substantive due process rights to be free from detention. *Barrera–Echavarria,* 44 F.3d at 1450.[11] Conversely, legal aliens subject to deportation ("deportable aliens") such as petitioner have procedural and substantive due process rights. *See Landon,* 459 U.S. at 25–27, 103 S.Ct. 321.[12] The extent of those substantive due process rights extends at least to the rights enunciated in the Fifth Amendment mandating that "no person shall ... be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V.; *Plyler v. Doe,* 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (stating that Fifth Amendment due process protections are accorded to all persons within territorial boundaries of United States, not just citizens).[13] Therefore, petitioner, a deportable alien with substantive due process rights, is entitled to have his detention reviewed for compliance with the Constitution.

### b. *High Probability of Success on the Merits*

■■■ The constitutionality of petitioner's detention must be considered in light of its purpose. The focus is "whether the detention is imposed for the purpose of punish-ment or whether it is merely incidental to another legitimate governmental purpose." *Gisbert v. United States Attorney General,* 988 F.2d 1437, 1441 (5th Cir.1993) (citing *Schall v. Martin,* 467 U.S. 253, 268–69, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984)). Absent "any expression of intent to punish on the part of the government, that determination will generally turn on 'whether an alternative purpose to which [the detention] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Gisbert,* 988 F.2d at 1441–42 (citing *Schall,* 467 U.S. at 268–69, 104 S.Ct. 2403). There being no evidence of the government's intent to punish,[14] the question of whether petitioner's detention violates substantive due process turns on whether the detention is excessive in the absence of its congressionally ordained purpose. The government urges that petitioner's detention arose from "the decision or action from the Attorney General to execute petitioner's deportation order." 8 U.S.C. § 1252(g). However, in this instance, the reality of deportation has all but disappeared, yet the Attorney General has continued to detain petitioner for more than three years. The government argues it is not the *fact* of deportation but the *order* of deportation which permits the Attorney General to detain petitioner indefinitely and presumably

---

**11.** In *Barrera–Echavarria,* the Ninth Circuit did not rule on the constitutionality of " 'indefinite' or 'permanent' detention with no prospect of release." The court found that the detention of Barrera (an excludable alien) was not indefinite or permanent because the Cuban Review Plan required at least annual review to determine if he met established eligibility criteria for parole. 44 F.3d at 1450. There is no such regular formal review plan applicable in the instant case. At the July 10, 1998, hearing on this matter, counsel for the INS supplied the court with a copy of new rules governing detainee appeals for release pending repatriation. *See* Procedures for the Detention and Release of Criminal Aliens by the I.N.S. and for Custody Redeterminations by the Exec. Office for Immigration Review, 63 Fed. Reg. 27441 (1998) (effective June 18, 1998) (to be codified at 8 C.F.R. Pts. 3 & 236). The court notes that these rules do not create a regular and periodic formal review plan analogous to that described in *Barrera–Echavarria.* Instead, these rules provide for release determinations by the district director and appeal to the Board of Immigration Appeals. *Id.* at 27449–27450 (to be codified at 8 C.F.R. § 236.1).

**12.** For example, a deportable alien's substantive due process rights include: (1) the right, within certain limits, to designate the country of deportation; (2) the right to depart voluntarily; and (3) the right to seek suspension of deportation. *Landon,* 459 U.S. at 26–27, 103 S.Ct. 321.

**13.** Excludable aliens are not persons within the territorial boundaries of the United States. *See supra* note 10.

**14.** The parties dispute whether petitioner is an "aggravated felon," but the determination of that fact would be irrelevant to the court's constitutional analysis. Even if petitioner is not an aggravated felon, the government may have legitimate reasons to detain petitioner that would foreclose a finding that the government intended to punish him by means of prolonged detention. Given petitioner's criminal history, the INS reasonably could have intended petitioner's detention to protect the public pending his deportation.

permanently. Here, the order of deportation contemplates repatriation of petitioner to Vietnam, however, Vietnam's refusal to acknowledge the order renders it unenforceable. At some point, indefinite detention of a deportable alien caused by an unenforceable INS order must intersect with the Constitution.

> [O]nce it becomes evident that deportation is not realizable in the future, the continued detention of the alien loses its raison d'etre. If there is nowhere to send the alien, then indefinite detention is no longer a temporary measure in the process of deportation; it is permanent confinement.... [T]he petitioner's detention of nearly four years with no end in sight, and the probability of permanent confinement, is an excessive means of accomplishing the purposes sought to be served by 8 U.S.C. § 1252(a).... This result "shocks the conscience".... Accordingly, the Court finds that the petitioner's detention is violative of his constitutional rights to substantive due process.

*Zadvydas v. U.S.*, 986 F.Supp. 1011, 1026–27 (E.D.La.1997). A fundamental liberty interest cannot be denied indefinitely absent a legitimate government purpose. Absent evidence that deportation will ever occur, the court finds that petitioner has a high probability of success on the merits.

### c. *Extraordinary or Exceptional Circumstances*

Petitioner has been confined by the INS for more than three years subject to an order of deportation. The INS cannot credibly assert that petitioner's deportation will occur. Petitioner is a *de facto* permanent prisoner neither charged with nor convicted of any crime.[15] The court finds that these circumstances are exceptional.

### d. *Danger to the Community*

If the government's goal is to protect the community pending petitioner's deportation, such a goal can warrant a deprivation of liberty under the proper circumstances. *United States v. Salerno*, 481 U.S. 739, 760, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The

government has previously relied on petitioner's past criminal record as justification to incarcerate him at various locations for more than three years. Prior to this proceeding, there is no indication in the record that the INS conducted any evaluation of petitioner to determine if he actually posed a threat to the community. However, in response to the court's inquiry regarding the government's safety reasons for detaining petitioner, an INS panel conducted an interview of petitioner and evaluated his suitability for release. Based upon that evaluation, government counsel suggested that petitioner may suffer from some mental illness that could pose a threat to the community.

At the July 20 hearing, government counsel sought to introduce a redacted version of the report of the INS panel interview. Government counsel explained that the redacted portions were conclusions and impressions of the district director's "subordinates" (including the INS panel's conclusions), which the INS considered privileged under the deliberative process privilege. Petitioner, in turn, objected to the admission of the redacted report on the ground that petitioner's counsel had not been advised of the interview of their client. The court sustained petitioner's objection.

Following the hearing, petitioner filed a motion before the magistrate judge to compel the government to produce the unredacted report. Prior to the hearing on petitioner's motion, the government produced the unredacted report. On July 28, 1998, petitioner submitted the unredacted report for the court's review. Petitioner having withdrawn his objection to the consideration of the report, the court vacates its previous ruling and receives the unredacted report for consideration.

At each hearing, including the July 20 hearing, the court made clear that its primary concern was whether petitioner's conditional release posed a danger to the community. Accordingly, the court *sua sponte* determined that a psychiatrist, selected by Pretrial Services, should conduct an evalua-

---

**15.** As noted above, petitioner does not have access to the type of regular formal review discussed in *Barrera–Echavarria*. *See supra* n. 11.

tion of petitioner to assess both the petitioner's mental condition and the effectiveness of Pretrial Services' proposed conditions for release. When the court expressed its concerns on the issue at the July 20 hearing, the INS had in its possession the unredacted July 16 report in which the INS panel concluded that petitioner, "upon being released from INS custody, *will not pose a threat to the community* if he is placed on supervised release and is ordered to first undergo a mental health evaluation and later be required to attend drug and alcohol prevention treatment." (Emphasis added.) Notwithstanding the panel's recommendation, the District Director found that "it is NOT clearly evident that [petitioner is] unlikely to pose a threat to the community and/or unlikely to violate the conditions of [his] release were a more favorable decision rendered on [petitioner's] behalf."

The court has now reviewed the report of Glenn Hakanson, M.D., the court-appointed psychiatrist who examined petitioner. Dr. Hakanson found that petitioner suffers from a delusional disorder, but found the disorder to be "relatively harmless" and treatable. Dr. Hakanson, however, found no data to support or discount a conclusion regarding petitioner's danger to the community.[16]

In light of that report and the entire record, there appears no justification for petitioner's continued imprisonment pending determination of his habeas petition.

The court orders petitioner released subject to the attached conditions (including the condition that petitioner participate in the treatment recommended by Dr. Hakanson) pending the court's ruling on petitioner's application for habeas corpus.

## CONCLUSION

1. The court adopts the magistrate judge's findings and recommendations of May 26, 1998, to the extent they are consistent with this memorandum and order.

2. Petitioner's application for release pending resolution of his petition for habeas corpus is GRANTED.

3. Petitioner IS ORDERED RELEASED from the custody of the INS on the conditions described in the attachment to this order.

4. Respondent's motion for reconsideration is DENIED as moot.

5. Respondent's request for a stay pending appeal is DENIED.

IT IS SO ORDERED.

## APPENDIX

### CONDITIONS OF RELEASE

RE: TAM, TRUONG THANH

Doc. No. CIV-S-98-0183

1. You shall report to and comply with the rules and regulations of the Pretrial Services Agency;

2. You shall report in person to the Pretrial Services Agency as directed;

3. You are released to the third party custody of The Salvation Army, 500 9th Street, Sacramento, California; (916) 958-7825;

  a. You shall reside at and participate in the Salvation Army as directed by program staff;

  b. Should you secure employment, you shall contribute to the cost of placement in The Salvation Army as directed by the Pretrial Services Officer;

4. Your travel is restricted to Sacramento County without the prior consent of the Pretrial Services Officer;

5. You shall reside at The Salvation Army, 500 9th Street, Sacramento, California, and not change your residence without the prior approval of the Pretrial Services Officer;

6. You shall not possess a firearm, destructive device, or other dangerous weapon; additionally, you shall provide written proof of divestment of all firearms currently under your control;

7. You shall refrain from any use of alcohol, or any use of a narcotic drug or other

**16.** In light of Dr. Hakanson's opinion that dissemination of the contents of his report may cause petitioner psychological harm, the court has sealed the report. It has been made available to counsel for the petitioner and respondent, subject to the seal.

controlled substance without a prescription by a licensed medical practitioner; and shall notify Pretrial Services immediately of any prescribed medications;

8. You shall submit to urinalysis as directed by the Pretrial Services Officer;

9. You shall seek and/or maintain employment;

10. You shall participate in a program of medical or psychiatric treatment, including treatment for drug or alcohol dependency, as directed by the Pretrial Services Officer.

07–10–98