**Tin Trong NGUYEN, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, and Robert Brown, Immigration Judge, Respondents.**

**No. CIV-98-990-L.**

United States District Court,
W.D. Oklahoma.

Sept. 30, 1999.

Order Denying Reconsideration;
Oct. 19, 1999.

William P. Earley, Federal Public Defender's Office, Oklahoma City, OK, for Petitioner.

Tin Trong Nguyen, Waurika, OK, pro se.

Ronny D. Pyle, U.S. Attorney's Office, Oklahoma City, OK, James T. Reynolds, Immigration & Naturalization Service, Dallas, TX, for Respondents.

### ORDER

LEONARD, District Judge.

On July 20, 1998, petitioner filed this action for relief pursuant to 28 U.S.C.

§ 2241. Petitioner seeks release from his continuing detention by the Immigration and Naturalization Service ("INS") pending deportation; he has been in the custody of the INS since November 8, 1996. Pursuant to 28 U.S.C. § 636(b), this matter was referred to the Honorable Valerie K. Couch for initial determination.[1] On July 2, 1999, Magistrate Judge Couch issued a thorough and extremely well-reasoned Report and Recommendation, recommending that the Petition for Writ of Habeas Corpus be granted in part and denied in part and that petitioner be released from INS custody. In making this determination, Magistrate Judge Couch correctly ruled that this court has jurisdiction under § 2241 to address petitioner's claims. *See Jurado-Gutierrez v. Greene,* 190 F.3d 1135, 1144–46 (10th Cir.1999).[2]

This matter is before the court on the timely filed objections of both petitioner and respondents. Petitioner objects to the recommendation that relief be denied on his claims that he was denied the right to counsel and to an interpreter at the deportation hearings, that the immigration judge lacked jurisdiction over his claims, and that his deportation would violate § 33 of the United Nations Convention Relating to the Status of Refugees. Respondents object to the ultimate recommendation that petitioner be released and contend that the Magistrate Judge erred in concluding that "Petitioner's continued physical detention is not rationally related to the congressionally ordained purpose of deportation and is, therefore, constitutionally impermissible in violation of Petitioner's right to substantive due process under the Fifth Amendment." Report and Recommendation at 31.

Pursuant to 28 U.S.C. § 636(b), the court must "make a de novo determination of

---

1. This matter was initially referred to the Honorable Bana Roberts. That order of referral was vacated on April 8, 1999 and the case was reassigned to Magistrate Judge Couch.

2. Although Magistrate Judge Couch did not have the benefit of the decision of the Court of

Appeals for the Tenth Circuit in *Jurado-Gutierrez,* she correctly resolved the thorny jurisdictional issues raised by the Antiterrorism and Effective Death Penalty Act and the Illegal Immigration Reform and Immigrant Responsibility Act.

those portions of the report or specified proposed findings or recommendations to which objection is made." In accordance with this mandate, the court has reviewed the Report and Recommendation, the objections presented by petitioner and respondents, and the case file. Based on this review, the court concludes that the Report and Recommendation should be adopted in its entirety. The court finds that Magistrate Judge Couch correctly analyzed petitioner's claims for appointment of counsel and an interpreter and found them to be without merit. Petitioner failed to demonstrate prejudice arising from his lack of counsel or an interpreter. Likewise the court concurs with the Magistrate Judge's analysis of petitioner's claims that the immigration judge lacked jurisdiction and that his deportation would violate the United Nations Convention Relating to the Status of Refugees. It is telling that petitioner advances no new arguments in support of his position on these claims and does not even assert that the Magistrate Judge erred in reaching her conclusions. Petitioner's objections to the Report and Recommendation are therefore overruled.

The court likewise overrules respondents' objections to the Report and Recommendation. Respondent argues that the Magistrate Judge's reliance on *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir.1981) was in error, noting that other circuits have declined to follow *Rodriguez-Fernandez. See* Federal Respondents' Objection to Report and Recommendations of United States Magistrate Judge at 16 [hereinafter cited as "Respondents' Objection"]. This court, however, is bound by Tenth Circuit precedent and finds that the Magistrate Judge correctly cited *Rodriguez-Fernandez* for the proposition that the government bears the burden of proving that the detention is temporary pending deportation and that petitioner can actually be deported within

a reasonable time. Respondent also contends that the Magistrate Judge's reliance on *Tam v. INS*, 14 F.Supp.2d 1184 (E.D.Cal.1998), was misplaced. Without providing documentary support, respondents assert that "the decision in *Tam* was vacated by the Ninth Circuit, No. 98-17242, *appeal pending,* and Tam's interim release order rescinded and remanded (sic) to the custody of the INS." Respondents' Objection at 17. As this court could find no indication in any published source that the trial court's decision in *Tam* had been vacated, the court contacted the Office of the Court Clerk for the Court of Appeals for the Ninth Circuit, which provided a copy of the appellate docket sheet. A review of the appellate docket sheet reveals that the Ninth Circuit has *not* issued an order vacating the trial court's decision *Tam.* This court agrees with the Magistrate Judge that *Tam* presents persuasive authority in support of the relief sought by petitioner. Finally, this court concurs with the reasoning of the United States District Court for the Western District of Washington, sitting *en banc,* in *Phan v. Reno,* 56 F.Supp.2d 1149 (W.D. Wash.1999). As in *Phan,* respondents here define the liberty interest at stake in this action too narrowly.[3]

The government argues that the interest at issue is petitioners' "right to be released into the United States pending [their] removal." But this definition construes petitioner's right too narrowly. The issue here is much more basic -- it is simply the right to be at liberty. Put another way, at issue is petitioners' fundamental liberty interest in being free from incarceration. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Petitioners' liberty interest is

---

**3.** In this case, respondents argue that petitioner "has no liberty interest in being released into American society." Respondents' Objection at 24. The interest at stake here, however, is the right to be free from permanent confinement given that there is no realistic expectation that petitioner will be deported.

fundamental and deserving of due process protection.

*Phan,* 56 F.Supp.2d at 1154. The Court found that while the "government's interest in effectuating the safe removal of aliens ordered deported is also substantial, ... this interest becomes less compelling as the probability of deportation decreases." *Id.* at 1157. In this case, respondents do not contest that the government of Vietnam has continuously ignored requests to obtain travel documents for petitioner. Respondents, however, contend that petitioner's detention cannot be considered permanent or indefinite because the INS has implemented a new procedure to review the custody status of individuals such as petitioner.[4] This procedure, which is memorialized in a February 3, 1999 memorandum authored by Michael A. Pearson, Executive Associate Commissioner for the INS, was before the Court in *Phan.* That Court, however, found that "our review of the record confirms that the INS does not meaningfully and impartially review the petitioners' custody status. The absence of any individualized assessment or consideration of the petitioner's situations in light of the pertinent fats set forth in the regulations violates their procedural due process rights.... The risk of erroneous deprivation of a petitioner's liberty interest is too great to deny him or her anything less than the full procedural protections available under the Constitution." *Phan,* at 1157. This court concurs.[5]

**4.** Although respondents are "confident the magistrate would have recommended differently had this administrative development been known to her," Respondents' Objection at 24, respondents did not raise this issue before the Magistrate Judge even though the Pearson Memorandum was issued more than three months before respondents filed their Supplemental Brief in Support of Respondents' Motion to Dismiss (filed May 17, 1999).

**5.** On September 16, 1999, *petitioner* informed the court that the INS conducted a review of his status pursuant to the Pearson Memorandum on September 14, 1999. Petitioner noted that "[t]he INS personnel conducting the

In sum, the court approves and adopts the Report and Recommendation in its entirety. The Petition for Writ of Habeas Corpus is DENIED in part and GRANTED in part. Respondents shall bring petitioner before the court on Tuesday, October 6, 1999 at 10:30 a.m. in Courtroom 503 of the United States Courthouse so that the court may impose the conditions of his release.

### ORDER

On July 20, 1998, petitioner filed this action for relief · pursuant to 28 U.S.C. § 2241, seeking · release from continuing detention by the Immigration and Naturalization Service ("INS") pending his deportation. Petitioner has been in INS custody since his release from state custody in November 1996. On September 30, 1999, the court approved and adopted a Report and Recommendation issued by the Honorable Valerie K. Couch, which · recommended that petitioner be released.

 This matter is before the court on respondents' Motions to Reconsider Order Adopting Report & Recommendation, to Dismiss the Petition, and alternative Motion to Stay Proceeding Pending Appeal. A "motion to reconsider" is not among the motions recognized by the Federal Rules of Civil Procedure. Nonetheless, the court will treat respondents' motion as a motion to alter or amend pursuant to Fed. R. Civ. P. 59(e) because the motion was filed less than ten days after entry of the court's ruling.[1] *See Committee for the*

hearing advised that their recommendation to the District Director would be made within two weeks. However, counsel was advised there is no particular date within which the District Director must make a decision." Advisement to the Court at 2. In light of the concerns expressed by the Court in *Phan,* coupled with the failure of respondents to notify the court of the pendency of this review, the court finds that there is no reason to delay issuance of this Order.

**1.** As judgment had not been entered before respondents filed their motion, respondents' motion does not technically constitute a motion to alter or amend the judgment.

*First Amendment v. Campbell,* 962 F.2d 1517, 1523 (10th Cir.1992). The purpose of a motion to alter or amend the judgment "is to correct manifest errors of law or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985) *(quoted in Campbell,* 962 F.2d at 1523).

> When supplementing a Rule 59(e) motion with additional evidence, the movant must show either that the evidence is newly discovered [and] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence.

*Chery v. Bowman,* 901 F.2d 1053, 1057–58 n. 6 (11th Cir.1990) *(quoted in Campbell,* 962 F.2d at 1523). Respondents assert three reasons why the court should reconsider its earlier decision. First, respondents contend that recent opinions from other jurisdictions support their position. Second, they argue that recent developments in negotiations with the Socialist Republic of Vietnam indicate a greater likelihood of future repatriation of Vietnamese nationals. Finally, respondents claim that on August 6, 1999, the INS implemented new post-removal custody review procedures that satisfy due process concerns. On October 15, 1999, the court held an evidentiary hearing at which petitioner testified and respondents presented the testimony of Reed D. Little, a Deportation Officer with the INS in Oklahoma City.

■ Based on the record as a whole, the court finds that respondents have not demonstrated that reconsideration of the court's September 30, 1999 Order is warranted. Neither of the appellate cases cited by respondents justifies a different result given the binding precedent in this circuit.[2] The Fifth Circuit's decision in *Zadvydas v.*

*Underdown,* 185 F.3d 279 (5th Cir.1999), is based on a premise that the Court of Appeals for the Tenth Circuit has rejected. The Fifth Circuit found that the liberty interest of a deportable alien, such as petitioner here, is no different than that of an excludable alien. *Zadvydas,* 185 F.3d at 285. The Tenth Circuit, however, has consistently held that resident aliens have significantly greater constitutional rights than excludable aliens. *See Baca-Prieto v. Guigni,* 95 F.3d 1006, 1007 n. 2 (10th Cir.1996) ("An alien excluded from the United States, *unlike one who has been admitted,* possesses extremely limited constitutional rights ....") (emphasis added). Furthermore, the law of this circuit remains that indefinite detention of an alien, *even an excludable alien,* amounts to impermissible punishment. *Rodriguez-Fernandez v. Wilkinson,* 654 F.2d 1382, 1387 (10th Cir. 1981). The reasoning of the court in *Vo v. Greene,* 63 F.Supp.2d 1278 (D.Colo.1999), is persuasive on this issue.

> [A]lthough *Landon* [*v. Plasencia,* 459 U.S. 21[, 103 S.Ct. 321, 74 L.Ed.2d 21] (1982)] is a procedural due process case, its broad language recognizing the constitutional right of lawfully admitted aliens to due process contains no such limitations. 103 S.Ct. at 329 ("permanent resident alien has a right to due process ...").

\* \* \* \* \* \*

Moreover, given that resident aliens have acknowledged constitutional rights, we cannot make those rights vanish by the legal expedient of a final order of deportation. In so concluding, the Fifth Circuit compounds legal fictions. Denial of constitutional rights to the excludable alien rests on the fiction that, although an alien is physically present in the United States, his "detention ... is only

---

**2.** At the hearing, respondents presented the court with a copy of an Order from the United States District Court for the Southern District of California in *Troung v. Immigration and Naturalization Serv.,* Case No. 98-CIV-2102TW (RBB) (S.D.Cal. Oct. 1, 1999). This

Order sheds no new light on the issues before this court and has no more precedential value than *Tam v. Immigration and Naturalization Serv.,* 14 F.Supp.2d 1184 (E.D.Cal.1998), which respondents contend the court should ignore.

a continuation of exclusion." The *Zadvydas* court builds upon this fiction by equating the deportable alien with the excludable once the deportation order is final. The court ignores the facts of admission and acquired constitutional status, classifying the resident alien as if his detention were the continuation of exclusion. I disagree. The distinction between "deportable" and "excludable" should be maintained beyond the entry of a final order of deportation.

*Vo,* 63 F.Supp.2d at 1283 (citations and footnote omitted).

The other case cited by respondents, *Ngo v. INS,* likewise does not compel reconsideration of this court's order. In *Ngo,* the Third Circuit cautioned:

> When detention is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable. The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption. Measures must be taken to assess the risk of flight and danger to the community *on a current basis.* The stake are high and we emphasize that grudging an perfunctory review is not enough to satisfy the due process right to liberty, even for aliens.

*Ngo,* 192 F.3d 390, 398 (emphasis added).

Neither *Zadvydas* nor *Ngo* is binding on this court, while *Rodriguez-Fernandez* is. *Rodriguez-Fernandez* provides not only that indefinite detention of an alien when there is no probability of repatriation constitutes impermissible punishment, but also that the government has the burden of establishing that the detention is in fact

temporary. Respondents attempt to meet this latter burden by presenting the affidavit of James G. Hergen, Assistant Legal Adviser for East Asian and Pacific Affairs with the Department of State. Mr. Hergen's affidavit, however, does not demonstrate that petitioner is any closer to deportation now than he was in 1996 when the INS first ordered him detained. Indeed, Mr. Hergen's affidavit gives substance to the Third Circuit's observation that diplomatic efforts with Vietnam are proceeding "at a speed approximating the flow of cold molasses." *Ngo,* 192 F.3d at 398–99. According to Mr. Hergen, it took more than one year to internally circulate draft documents among the Department of State, the INS, and the Department of Justice. The "negotiating draft" was just transmitted to Vietnam on September 2, 1999, with a request that it provide the United States with a preliminary position within 30 to 60 days. In answer to the court's questions at the October 15 hearing, respondents indicated that no response from the government of Vietnam has been received to date, even though more than 30 days have passed since the negotiating draft was transmitted. Moreover, this court does not share the Third Circuit's overly optimistic view that these latest diplomatic efforts indicate that "[i]t is extremely unlikely that petitioner's detention will be permanent." *Id.* Even if a repatriation agreement is signed at some point in the future, there is still no guarantee that Vietnam will accept petitioner.

■ Finally, respondents contend that reconsideration is warranted in light of the new procedures implemented in August 1999.[3] The latest post-order custody review procedures are detailed in a memorandum issued on August 6, 1999 by Michael A. Pearson, Executive Associate Commissioner of the INS ("Pearson III").[4] The Pear-

---

3. Respondents did not seek to supplement the record or to provide the court with a copy of these procedures prior to entry of the court's September 30, 1999 Order.

4. This is the third memorandum issued by Mr. Pearson this year. The first memorandum, entitled Detention Procedures for Aliens Whose Immediate Repatriation is Not Possible or Practicable, was issued on February 3,

son III memorandum provides that "[t]he alien will receive an in-person interview at the first custody review following expiration of the removal period." Exhibit A to Respondents' Motions to Reconsider Order Adopting Report & Recommendation at 1 [hereinafter cited at "Respondents' Motions"]. "Custody determinations will be made by weighing favorable and adverse factors to determine whether the detainee has demonstrated by clear and convincing evidence that he does not pose a threat to the community, and is likely to comply with the removal order. *See* 8 C.F.R. § 241.4." *Id.* at 3, ¶ (6). The cited regulation provides that the following factors should be considered:

(1) The nature and seriousness of the alien's criminal convictions;

(2) Other criminal history;

(3) Sentence(s) imposed and time actually served;

(4) History of failures to appear for court (defaults);

(5) Probation history;

(6) Disciplinary problems while incarcerated;

(7) Evidence of rehabilitative effort or recidivism;

(8) Equities in the United States; and

(9) Prior immigration violations and history.

8 C.F.R. § 241.4(a). The Pearson III memorandum declares that "[a] decision to detain will clearly delineate the factors presented by the alien in support of his release, and the reasons for the District Director's decision." Exhibit A to Respondents' Motions at 3, ¶ (7).

Pursuant to these procedures, petitioner was personally interviewed on September 14, 1999 by a review panel consisting of Mr. Little and Lynn W. Pasley. On October 1, 1999, John E. Ramirez, Acting District Director, determined that petitioner's custody status should not be changed.[5] As Mr. Ramirez did not delineate the reasons for his decision, the court must assume that he adopted the reasoning presented by the review panel. The review panel found that petitioner should be detained because he "accepts no responsibility for his criminal offenses and ... [h]is story is completely unbelievable as told." Post Removal Period Custody Review Worksheet at 4-5. While the review panel found that petitioner's version of the events surrounding his crime were not credible, Mr. Little conceded that it did so without reviewing the transcript of petitioner's trial or even a police report. Rather than analyzing petitioner's current status, the review panel focused on the acts that led to petitioner's conviction, which occurred more than four years ago. Contrary to the Pearson III memorandum and the regulations, there was no discussion of whether petitioner currently represents a danger to the community, even though the Pearson III memorandum specifically provides that "[t]he fact that the alien has a criminal history does not create a presumption in favor of continued detention." Exhibit A to Respondents' Motions at 3, ¶ (6). The Court in *Ngo* stressed that "[d]ue process is not satisfied, however, by rubberstamp denials based on temporally distant offenses. The process due even to deportable and excludable aliens requires an opportunity for an evaluation of the individual's *current* threat to the community and his risk of flight." *Ngo,* 192 F.3d at 399. The Western District of Washington sitting *en banc* criticized INS post-removal proceedings because "Directors simply relied on the aliens' past criminal history and the fact that they were facing removal from the United States, summarily concluding that the aliens posed such risks and denying

---

1999 ("Pearson I") and was cited by respondents in their Objections to the Report and Recommendation. The second memorandum, issued on April 30, 1999, was entitled Supplemental Detention Procedures ("Pearson II").

5. Neither counsel for petitioner nor the court, however, received a copy of the District Director's decision until the hearing on October 15, 1999.

them release." *Phan v. Reno,* 56 F.Supp.2d at 1157 (W.D.Wash.1999). The Third Circuit concurred that such a review does not comport with due process. *Ngo,* 192 F.3d at 399. Nonetheless, that is exactly what occurred here. Neither the District Director nor the review panel assessed petitioner's current dangerousness and did not even address his risk of flight until the hearing at which point Mr. Little conceded that petitioner is not a flight risk. The court must agree with counsel for petitioner that "[t]he 'new and improved' review procedure continues to be form over substance and will result in Mr. Nguyen's indefinite detention." Petitioner's Response to Respondent's Motions to Reconsider Order Adopting Report and Recommendation, to Dismiss the Petition or, in the Alternative, to Stay Proceeding Pending Appeal at 7-8.

In short, the court finds that respondents have not demonstrated that reconsideration of the court's September 30, 1999 Order is warranted. For the same reasons, respondents have failed to establish that Petition for Writ of Habeas Corpus should be dismissed and have given the court no reason why it should stay these proceedings pending appeal. Respondents' Motions to Reconsider Order Adopting Report & Recommendation, to Dismiss the Petition or, in the alternative, to Stay Proceeding Pending Appeal (Docket No. 46) are DENIED. Respondent shall bring petitioner before the court on Monday, October 25, 1999 at 11:30 a.m. in Courtroom 503 of the United States Courthouse so that the court may impose the conditions of his release.