Khamsaene SIVONGXAY, Petitioner,

v.

Janet RENO, United States Attorney General; United States Immigration and Naturalization Service; and Richard C. Smith, Seattle INS District Director, Respondents.

No. C99–341WD.

United States District Court, W.D. Washington, at Seattle.

July 9, 1999.

Jay Warren Stansell, Jennifer Wellman, Federal Public Defender's Office, Khamseane Sivongxay, [Pro Se], FDC SEA–TAC, Seattle, WA, for Khamseane Sivongxay, petitioners.

Quynh Vu, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for U.S. Immigration and Naturalization Service, Richard Smith, respondents.

### ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

DWYER, District Judge.

This is a petition for a writ of habeas corpus by Khamsaene Sivongxay, an alien held indefinitely by the Immigration and Naturalization Service (INS) for deportation but undeportable because his country of origin refuses to receive him. Sivongxay's amended petition named the INS as the sole respondent, but the Attorney General and the INS District Director are proper respondents in this action, and they have appeared through counsel and have filed briefs in opposition to the petition. The respondents are referred to collectively as the INS. The case has been designated as one of five "lead" cases representative of many others brought by aliens similarly held in custody. *See* Dkt. # 8. The four other lead cases are *Phan v. Smith*, 56 F.Supp.2d 1158 (W.D.Wash 1999); *Huynh v. INS*, 56 F.Supp.2d 1160

(W.D.Wash. 1999); *Batyuchenko v. INS,* C99–185R, 56 F.Supp.2d —— (W.D.Wash. 1999); and *Ma v. INS,* 56 F.Supp.2d 1165 (W.D.Wash. 1999). The common issues were briefed together, and oral argument by the parties and amici curiae was heard on June 17, 1999, by the five district judges to whom the lead cases are assigned. The July 9, 1999, Joint Order entered in the five lead cases establishes a framework to analyze the constitutional issues presented.

The record shows that Sivongxay, a citizen of Laos, entered this country lawfully as a refugee in 1987 and became a permanent resident in 1989. He is married and has one child. His wife and child are citizens of the United States. In 1990 Sivongxay was convicted of theft and criminal mischief, and sentenced to five years' probation. Neither offense made him deportable. But in 1993 he was convicted of being a felon in possession of a weapon, which is a deportable offense; the weapon in question was a .22 caliber rifle. The INS initiated deportation proceedings against him and took him into custody on September 23, 1993. After his request for political asylum was denied, Sivongxay was ordered deported on January 19, 1994. In February 1994 he was released from custody after posting a bond. The order of deportation became final on April 20, 1994, when it was affirmed by the Board of Immigration Appeals (BIA). When Sivongxay failed to appear for deportation, the INS issued a warrant for his arrest. He was arrested on April 16, 1997, and has remained in custody since then, a period of more than two years. He cannot be deported to Laos because the Laotian government refuses to issue travel documents to him.

Sivongxay and the other four lead petitioners raise constitutional challenges to their continued detention by the INS. They allege that their detention violates their right to substantive due process under the Fifth Amendment because any limited interest the government may have in detaining them to prevent flight and protect the public does not justify their indefinite detention when there is little chance, if any, that they will be removed. They also allege a denial of procedural due process in that they have been detained without a hearing before an impartial decisionmaker. In addition to these constitutional arguments, Sivongxay contends that the INS was required by statute either to deport him or to release him after six months in custody. For the reasons given below, Sivongxay's case is now decided on statutory grounds. In addition, although the constitutional issues ordinarily would not be reached, *see Gomez v. United States,* 490 U.S. 858, 864, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), they will be decided in this instance because they are necessarily decided in the Joint Order filed in the five lead cases.

The jurisdictional issue must be decided first. The INS argues that the court lacks jurisdiction and that Sivongxay has failed to exhaust his administrative remedies. But, as held in the Joint Order, habeas corpus jurisdiction exists under 28 U.S.C. § 2241 to decide the non-discretionary questions of statutory and constitutional law raised by this petition. *Goncalves v. Reno,* 144 F.3d 110 (1st Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). There is no exhaustion of remedies requirement in the immigration statutes. *See generally* the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. 104–132, 110 Stat. 1214 (enacted on April 24, 1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. 104–208, 110 Stat. 3009–546 (enacted on September 30, 1996). Moreover, there is no administrative proceeding in which Sivongxay could litigate the statutory and constitutional claims raised in his petition. Under the circumstances, "sound judicial discretion" advises against imposing an exhaustion requirement. *See McCarthy v. Madigan,* 503 U.S. 140, 144,

112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Accordingly, the issues raised in this petition are properly before the court.

Sivongxay's statutory argument is based on the presumption against retroactive application of new laws. He contends that the recent changes in the detention requirements of the immigration laws do not apply to his case, and that under the applicable statute he cannot be detained for more than six months.

Before AEDPA and IIRIRA were enacted, the Attorney General was authorized but not required to take into custody any alien who had been charged with deportability. 8 U.S.C. § 1252(a)(1) (1994). Following issuance of a deportation order, an alien generally could not be detained pending deportation for more than six months: "When a final order of deportation ... is made against any alien, the Attorney General shall have a period of six months from the date of such order, or if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States." 8 U.S.C. § 1252(c) (1994). When the six-month period expired, the alien had to be released but remained subject to the supervision of the Attorney General. 8 U.S.C. § 1252(d) (1994). For an alien who had committed an aggravated felony, different rules applied. "[U]pon release of the alien," the Attorney General had to take him or her into custody and could release the person only if he or she did not present a flight risk or other risk to the community. 8 U.S.C. § 1252(a)(2) (1994). The prohibition against release of an aggravated felon applied to both pre- and post-deportation order detention. 8 U.S.C. § 1252(a)(2)(A) (1994). It is undisputed that Sivongxay was *not* ordered deported for having committed an "aggravated felony" within the statutory definition. His case, in this respect, differs from many others now pending.

AEDPA eliminated the Attorney General's discretion to release aliens convicted of certain crimes, *see* AEDPA § 440(c), but left the six-month detention rule intact for other aliens. For most aliens, this section of AEDPA was in effect only between April 24, 1996, when it was enacted, and October 9, 1996, when the transition period custody rules of IIRIRA, § 303(b)(3) took effect. *See* IIRIRA § 303(b)(2).

Section 303 of IIRIRA again modified the rules regarding detention of criminal aliens. Under the permanent rules, which went into effect on October 10, 1998, the Attorney General is required to take into custody, upon his or her release from prison, any alien who is deportable for having committed an aggravated felony, a controlled substance violation, a firearms offense, two or more crimes of moral turpitude, or certain other offenses not at issue here. *See* IIRIRA § 303(a); 8 U.S.C. § 1226(a), (c). Such a person may be detained "pending a decision on whether the alien is to be removed from the United States." *See* IIRIRA § 303(a); 8 U.S.C. § 1226(a), (c). The Attorney General generally has no discretion to release such an alien pending the outcome of the proceedings. *See* IIRIRA § 303(a); 8 U.S.C. § 1226(c)(2).

Anticipating that the INS might not have the immediate capacity to identify and detain all such aliens, Congress implemented transitional rules that were in effect from October 9, 1996 to October 9, 1998. *See* IIRIRA § 303(b)(2), (3); *In re Garvin-Noble*, Interim Decision 3301, 1997 WL 61453 (B.I.A. Jan 16, 1997). The transitional rules supplanted section 440(c) of AEDPA and delayed the effective date of IIRIRA's permanent rules regarding detention of aliens in removal proceedings. *Id.* Under the transitional rules, the Attorney General had discretion to release criminal aliens upon a showing that they were neither a danger to the community nor a flight risk. IIRIRA § 303(b)(3)(B).

Section 305 of IIRIRA established new rules governing the detention and removal

of aliens after they have been ordered removed: [1]

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), [making aliens convicted of certain crimes removable], or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the [90-day] removal period and, if released shall be subject to [conditions of supervision].

8 U.S.C. § 1231(a)(6) (West 1999). Such aliens must be detained for the first 90 days after the order of removal is entered, 8 U.S.C. § 1231(a)(2), and may be released after that time only if they can demonstrate by clear and convincing evidence that "the release would not pose a danger to the community or a significant flight risk." 8 C.F.R. § 241.4 (1999) ("Continued detention beyond the removal period").

Unlike many other sections of IIRIRA, section 305 does not have its own effective date provision. Section 309 of IIRIRA states that "[e]xcept as provided in this section and sections 303(b)2), 306(c), 308(d)(2)(D), or 308(d)(5) of this division, this subtitle [IIRIRA] and the amendments made by this subtitle shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act." Accordingly, because IIRIRA was enacted on September 30, 1996, it went into effect on April 1, 1997. Section 309(c) further provides that

[s]ubject to the succeeding provisions of this subsection [not applicable here], in the case of an alien who is in exclusion or deportation proceedings as of the title III–A effective date—

> (A) the amendments made by this subtitle shall not apply, and

> (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

IIRIRA § 309(c)(1). The Attorney General has discretion, however, to terminate proceedings under the old laws and reinitiate them under the new laws. IIRIRA § 309(c)(2). Generally, an alien is considered to be "in deportation or exclusion proceedings" from the time a charging document is issued until a final order of deportation or exclusion is issued.[2]

■ It is necessary to determine which of the various detention provisions potentially applies here. In 1993, Sivongxay was convicted of being a felon in possession of a weapon, which was a deportable offense but not an aggravated one at that time. The INS began deportation proceedings against him and took him into custody on September 23, 1993. He was ordered deported on January 19, 1994, and the order became final on April 20, 1994. When Sivongxay was initially taken into INS custody in 1993, when deportation proceedings against him commenced, and when deportation proceedings concluded, the applicable post-deportation order detention statutes were 8 U.S.C. § 1252(c) & (d) (1994). Had he been detained at that time, the INS could not have held him for

1. *See also Moro v. INS*, 1999 WL 342721, at *2 n. 6 (N.D.Ill. May 17, 1999) (stating that 8 U.S.C. § 1226 [IIRIRA § 303] governs the "apprehension, detention, and release of aliens pending [a removal] decision," whereas 8 U.S.C. § 1231 [IIRIRA § 305] governs detention and release after a final order of removal has been entered).

2. 8 U.S.C. § 1229a (1999) governs but does not explicitly define the scope of "removal proceedings." Deportation proceedings commence when the alien is charged with deportability. *See* 8 C.F.R. § 3.14 (1999). From the context of the INA, it is clear that an alien is no longer "in deportation proceedings" once a final order of deportation or removal has been entered. *Compare* 8 U.S.C. § 1229a (titled "removal proceedings," the section describes the procedures for determining whether an alien is removable, but does not address detention after an order of removal has been entered) *with* 8 U.S.C. § 1231 ("Detention and removal of aliens ordered removed").

more than six months. Because Sivongxay failed to turn himself in, he was not detained by the INS until April 16, 1997. By that time, the six-month limitation had been repealed and the post-deportation order detention scheme of IIRIRA § 305 was in effect. 8 U.S.C. § 1231(a)(6) (1997).[3] Application of the latter rules to Sivongxay would mean that he could obtain release only by demonstrating by clear and convincing evidence that he did not present a flight risk or risk to the community. 8 C.F.R. § 241.4. Thus the relevant retroactivity question is whether 8 U.S.C. § 1231(a)(6), which states that "an alien ordered removed ... may be detained," with no specified time limit, applies to an order of removal or deportation entered prior to April 1, 1997.

In *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court set out a two-part retroactivity test: First, if Congress clearly prescribes the statute's proper reach, that is the end of the matter. *Id.* Second, in the absence of such a clear prescription, the Court must assess "whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* "If so, then in keeping with the 'traditional presumption' against retroactivity, we presume that the statute does not apply to that conduct." *Martin v. Hadix*, —— U.S. ——, 119 S.Ct. 1998, 2003, —— L.Ed.2d —— (1999) (citing *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483).

Here, Congress did not indicate whether the detention provisions of 8 U.S.C. § 1231(a)(6) apply to orders of deportation or removal entered before the section's effective date. The question therefore turns on whether the change in the post-deportation order detention scheme would have a prohibited retroactive effect.

The Supreme Court held last month that the test of whether a statute has a retroactive effect is a practical one: "The inquiry into whether a statute operates retroactively demands a common sense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment. This judgment should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." *Martin*, —— U.S. ——, at ——, 119 S.Ct. 1998, 2006, —— L.Ed.2d ——, at —— (citing *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483) (citation and quotation marks omitted). The Court rejected the notion that retroactivity analysis turns on whether a statute is "substantive" or "procedural": "[I]n Landgraf ... we also cautioned that the mere fact that a new rule is procedural does not mean that it applies to every pending case. We took pains to dispel the suggestion that concerns about retroactivity have no application to procedural rules. When determining whether a new statute operates retroactively, it is not enough to attach a label (e.g., 'procedural,' 'collateral') to the statute; we must ask whether the statute operates retroactively." *Martin*, —— U.S. ——, at ——, 119 S.Ct. 1998, 2006, —— L.Ed.2d ——, at ——

---

**3.** The government contends that Sivongxay was detained on April 16, 1997 under the transition period custody rules. Those rules, however, apply only if aliens are taken into custody by the INS "when the alien[s][are] released" from prison for the underlying offenses that made them deportable. *See* IIRIRA § 303(b)(3)(A). Numerous cases have held the nearly identical "upon release" provisions of AEDPA § 440(c) and former 8 U.S.C. § 1252(a)(2) inapplicable to releases that occurred before the effective dates of the respective acts. *See, e.g., Morales–Villagomez v. Smith*, 1996 WL 622451, at *7–8 (W.D.Wash. July 31, 1996); *Pastor–Camarena v. Smith*, 977 F.Supp. 1415, 1417–18 (W.D.Wash.1997). The government's implicit position—i.e., that Sivongxay was "released" for purposes of the transition period custody rules when he was transferred from the custody of the Everett police to the INS on the same day that he had been picked up on suspicion of vehicle prowling—is unsupportable.

(citations and internal quotation marks omitted).

In light of these principles, it becomes clear that application of § 1231(a)(6) to Sivongxay would cause a "retroactive effect."

Following entry of his final order of deportation, Sivongxay retained a liberty interest: the right to be released from INS custody after six months if he could not be deported within that time. Had he known that the rules would change to permit him to be detained indefinitely, he might well have reported for deportation as scheduled, in which event he would have been released under pre-IIRIRA law. Section 1231(a)(6) thus "increases liability for past conduct" and upsets settled expectations. For Sivongxay, the difference is between short-term detention in aid of deportation and detention for an uncertain and open-ended time.

The cases the government cites are not on point. In *Alvarez–Mendez v. Stock*, 941 F.2d 956, 960 (9th Cir.1991), the court held that a 1990 amendment to the immigration laws that authorized the indefinite detention of aliens convicted of certain crimes did not retroactively legalize any pre–1990 detention. The court stated that "the only issue before us is whether [the petitioner's] detention is illegal today." *Id.* Whether the amendment applied retroactively to pre–1990 orders of deportation was not before the court because the detention scheme was based on criminal convictions, not orders of deportation or exclusion. *Id.* In *Thanh v. McElroy*, 964 F.Supp. 913 (E.D.Pa.1997), the court held that the petitioner's detention under AEDPA § 440(c) was lawful because the technical amendments made by IIRIRA made clear that the detention rules applied regardless of when the petitioner had been convicted of crimes of moral turpitude. Whether AEDPA § 440(c) applied to or-

ders of deportation entered prior to AEDPA's enactment was not at issue. *Id.*

Sivongxay cites cases holding that AEDPA § 440(c) applies neither to aliens who were already being detained under the pre-AEDPA version of 8 U.S.C. § 1252, see, e.g., *United States v. Igbonwa*, 1996 WL 694178 (E.D.Pa. Nov.29, 1996), nor to aliens who were released from incarceration prior to AEDPA's enactment. *See, e.g., Pastor–Camarena v. Smith*, 977 F.Supp. 1415, 1416–17 (W.D.Wash.1997); *Montero v. Cobb*, 937 F.Supp. 88 (D.Mass. 1996). He cites no case stating that 8 U.S.C. § 1231(a)(6) cannot be applied to pre-IIRIRA deportation orders, and none appears to exist.[4] Three unreported district court cases have applied § 1231(a)(6) to aliens whose orders of deportation became final before IIRIRA's effective date, but none considered the presumption against retroactivity. *See Cankat v. Reno*, 1999 WL 350125 (S.D.N.Y. May 27, 1999); *Cholak v. United States*, 1998 WL 249222 (E.D.La. May 15, 1998); *Kai v. INS*, 1997 WL 786946 (S.D.N.Y. Dec.22, 1997).

A useful comparison is provided by *United States v. McCahill*, 765 F.2d 849 (9th Cir.1985). The Ninth Circuit there held that a new statute governing bail pending appeal applied to persons convicted before the act's effective date, notwithstanding the ex post facto clause, because no change in the length of confinement was involved:

> As the time served in custody pending appeal will be credited to the ultimate sentence imposed, see 18 U.S.C. § 3568 (1982), the change merely advances the date of custody. The law does not alter or affect the length, severity, weight or other significant condition of the punishment. The law is procedural because it does not alter the quantum of punishment.

*Id.* at 850. Here, in contrast, the quantum of Sivongxay's detention has increased

<hr/>

**4.** A June 29, 1999 Westlaw search for the numbers 1231(a)(6) or 241(a)(6) revealed no such cases.

dramatically as a result of the new post-deportation detention scheme of IIRIRA, going from a maximum of six months to two-plus years with no end in sight. *McCahill*, as a criminal case, involved ex post facto rather than due process jurisprudence and relied on a distinction between "substantive" and "procedural" that has since been rejected in the context of retroactivity analysis, *see Martin*, — U.S. ——, 119 S.Ct. 1998, — L.Ed.2d ——, at\*10, but it supports the conclusion that § 1231(a)(6) cannot be applied to prolong Sivongxay's detention.

Because § 1231(a)(6) would have a retroactive effect if applied here, and because Congress has not clearly indicated that this detention provision should apply to aliens whose orders of deportation became final before IIRIRA went into effect on April 1, 1997, Sivongxay's detention is governed by pre-IIRIRA law. Accordingly, since he has been held for more than the allowable six-month period, he must be released.

Although the statutory ground requires that the petition be granted, the constitutional issues, for the reasons given above, will be considered as well. As discussed in the Joint Order, although Sivongxay has been ordered deported, he remains on United States soil and is a "person" with rights to substantive and procedural due process under the Fifth Amendment to the United States Constitution. *See Landon v. Plasencia*, 459 U.S. 21, 32–33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); *see also,* Joint Order, at 5–7. Because the right to be free is fundamental, heightened scrutiny applies. *See Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

■ Sivongxay's detention violates the substantive component of the due process clause if it is excessive in relation to permissible government interests. *See Martinez v. Greene*, 28 F.Supp.2d 1275, 1282 (D.Colo. 1998) (citing *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095); *Tam v. INS*, 14 F.Supp.2d 1184, 1191 (E.D.Cal.1998) (quot-

ing *Gisbert v. U.S. Attorney General*, 988 F.2d 1437, 1441 (5th Cir.1993)); *Zadvydas v. Caplinger*, 986 F.Supp. 1011, 1025–26 (E.D.La.1997); *Bell v. Wolfish*, 441 U.S. 520, 536–40, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see also* Joint Order, at 7–10. The government has an interest in deporting Sivongxay, but the record shows that it is unlikely he will be deported at any time in the foreseeable future. He is a Laotian refugee without a Laotian passport, Laos will not issue travel documents to persons without valid passports, and the INS has not shown that Laos is likely to reverse its position. The government has an interest in protecting the public from dangerous felons pending deportation, but in this instance the record does not show any serious level of danger to the public. Sivongxay was ordered deported for having possessed a low-caliber hunting rifle; he has not been convicted of a crime of violence, was never charged in regard to his 1997 arrest on suspicion of vehicle prowling, and was incarcerated for a total of only 60 days for his crimes. He presents some flight risk, but that clearly cannot justify indefinite detention.

The minimal interest the government has in continuing to detain Sivongxay after more than two years pales in relation to his constitutional liberty interest. His continued detention is excessive in relation to the permissible government interests involved. Accordingly, the substantive component of the Due Process Clause of the Fifth Amendment requires that the petition be granted.

Because the statutory and substantive due process grounds are decisive, there is no need in this case to reach the procedural due process issue. *See United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

For the reasons stated, the petition for a writ of habeas corpus is granted. Respondents are directed forthwith to release Si-

vongxay from custody, subject to the supervision of the Attorney General.