### Son Thai HUYNH, Petitioner,

v.

### Janet RENO; United States Immigration and Naturalization Service; and Richard C. Smith, Respondents.

### No. C99–177C.

United States District Court,
W.D. Washington,
at Seattle.

July 9, 1999.

Jay Warren Stansell, Jennifer Wellman, Federal Public Defender's Office, Ann E Benson, Northwest Immigrant Rights Project, Aaron Caplan, American Civil Liberties Union of WA, Seattle, WA, for Son Thai Huynh, petitioners.

Quynh Vu, U.S. Department of Justice, Office of Immigration Litigation, Christopher Lee Pickrell, U S Attorney's Office, Seattle, Washington, DC, for U.S. Immigration and Naturalization Service, Richard Smith, respondents.

### ORDER

COUGHENOUR, Chief Judge.

Son Thai Huynh's petition for writ of habeas corpus is one of many petitions

---

currently pending in the Western District of Washington raising the same common legal issue: whether the INS's detention of aliens who have been ordered deported to countries that refuse to receive them violates substantive or procedural due process. In the preceding Joint Order, the judges of the Western District agreed on an appropriate legal framework pursuant to which individual petitions must be reviewed.[1] In this Order, the Court applies this framework to the facts of Mr. Huynh's case. In so doing, the Court finds his continued detention to violate his substantive due process rights and does hereby GRANT his petition for writ of habeas corpus.

## I. BACKGROUND

Son Thai Huynh was born on September 26, 1968 in Cholon, Vietnam to a Vietnamese mother and an American father. His father was a member of the United States Armed Forces and a man whom Huynh has never met. At age 15, he was admitted to the United States as a refugee, along with his mother and four siblings, and he became a lawful permanent resident on June 25, 1985, retroactive to his date of entry, March 26, 1984. When he entered the United States, he had received no formal education and was illiterate.

Shortly after his arrival, Mr. Huynh became involved with individuals he describes as "peers that influenced me to participate in illegal activities." Since that time, Mr. Huynh has been arrested numerous times, generally for non-violent crimes such as vehicle prowling, driving with a revoked license, receiving stolen property, and theft. On October 6, 1995, Mr. Huynh pleaded guilty to residential burglary and, in light of the earlier offenses, was treated as a habitual offender under Washington law and sentenced to thirty-three months.

Upon his release on August 25, 1997, Mr. Huynh was taken into custody by the Immigration and Naturalization Service and placed in removal proceedings based on his commission of crimes constituting "aggravated felon[ies]" under INA § 237(a)(2)(A)(iii). On October 22, 1997, an immigration judge ordered him held without bond, and on November 12, 1997, he was ordered deported to Vietnam. Mr. Huynh waived his right to appeal, and no alternate country of deportation was designated.

The INS wrote to the Vietnamese Embassy on November 18, 1997 to request travel documents for Mr. Huynh's return to Vietnam. To date, no travel documents have been received. Although the INS maintains it has recently met with the State Department to draft a Vietnam repatriation agreement, there is no evidence suggesting Vietnam will issue the necessary travel documents in the foreseeable future.

On May 31, 1998, through his attorney Mr. Huynh requested that the INS release him on parole pending his deportation to Vietnam. Along with this request, Mr. Huynh's siblings and parents submitted a letter affirming their commitment to him and their belief that he poses neither a risk of flight nor a danger to the public. Mr. Huynh's former employer also submitted a letter in which he describes Mr. Huynh as a hard worker and a good person, agreeing to provide him with a job upon his release from detention. Having received his request, the INS district director reviewed his file and scheduled an interview for September 16, 1998. It is unclear from the administrative record whether this interview actually occurred. However, an INS entry dated November 22, 1998 reads: "Subject interviewed and stressed out why detained." (AR–216) The record reveals no formal denial of Mr. Huynh's release request.

---

1. The Court hereby incorporates by reference the Joint Order dated July 9, 1999, governing issues common to all petitioners.

On January 8th and 24th, 1999, Mr. Huynh made two additional, hand-written requests for release. Again, there was no official denial by the INS in the administrative record, however another INS entry dated February 22, 1999 reads: "no material change in case[,] still ag[gravated] felon[,] mandatory detention for violence."

On March 2, 1999, Mr. Huynh filed a petition for writ of habeas corpus with this Court in which he challenges on both substantive and procedural due process grounds the constitutionality of the authority of the INS to detain him indefinitely. He also seeks judicial review of his final order of deportation.[2]

## II. DUE PROCESS ANALYSIS

As set forth in the Joint Order, the Court must determine whether Mr. Huynh's indefinite detention is excessive in relation to the government's primary goal of facilitating his safe removal and its ancillary goals of preventing flight pending deportation and protecting the public from aliens who have committed crimes. The Court therefore balances the likelihood the government will be able to effectuate deportation, against Mr. Huynh's dangerousness and the likelihood that he will abscond if released.

It is clear there is no definitive end to Mr. Huynh's detention. The INS's *only* formal request to Vietnam for his travel documents occurred in November of 1997, nearly two years ago. No response was received. Although the INS suggested both in its brief and at oral argument that Vietnam recently invited the United States to submit a repatriation agreement covering deported aliens such as Mr. Huynh, it can provide no assurances that Mr. Huynh will be deported in the near, or even foreseeable, future. Given the government's inability to facilitate Mr. Huynh's deportation, its regulatory interest in his detention is considerably diminished.

The government's ancillary interests in preventing flight and protecting the public from dangerous felons are similarly weak. Mr. Huynh's administrative file reveals that his family members, most of whom reside in Seattle, will provide him a place to stay upon his release. His former employer also promises to offer him a job. These facts suggest that Huynh poses a minimal risk of fleeing upon release. And, Mr. Huynh's criminal history-though lengthy-does not suggest any grave danger to society.

In balancing the much diminished government interests in extending Mr. Huynh's detention indefinitely against the very narrow likelihood the government will effectuate deportation in the foreseeable future and the very strong constitutional interest at stake, the Court has no doubt in concluding that Mr. Huynh's detention is excessive in relation to the government's regulatory goals. Consequently, the INS's continued detention of Mr. Huynh violates his substantive due process rights as guaranteed by the Fifth Amendment to the United States Constitution.

## CONCLUSION [3]

In light of the foregoing, Mr. Huynh's petition for writ of habeas corpus is hereby GRANTED. The INS is ORDERED to release petitioner subject to supervision of the Attorney General on conditions of release set forth in 8 C.F.R. § 241.5. The Court shall retain jurisdiction over this

---

**2.** This Order pertains only to Mr. Huynh's due process claims. The Court will reserve for subsequent briefing and argument the challenge to his final order of deportation, including any jurisdiction and exhaustion issues raised therein.

**3.** Because the Court concludes that Mr. Huynh's indefinite detention violates his substantive due process rights, it is unnecessary to reach his procedural due process argument: only when a restriction on liberty survives substantive due process scrutiny does the further question of whether the restriction is implemented in a procedurally fair manner become ripe for consideration. *See United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

matter to consider petitioner's challenge to his underlying order of deportation.