Thien Van VO, Petitioner,

v.

Joseph GREENE, District Director, United States Immigration and Naturalization Service, Denver, Colorado, Respondent.

Arounkon "Tay" Saynourath, Petitioner,

v.

Joseph Greene, District Director, United States Immigration and Naturalization Service, Denver, Colorado, Respondent.

Civil Action Nos. 98–WM–2427, 98–WM–2428.

United States District Court, D. Colorado.

Aug. 31, 1999.

James Salvator, Lafayette, CO, for petitioners.

Michael Hegarty, Assistant U.S. Attorney, Denver, CO, for respondent.

### MEMORANDUM OPINION AND ORDER

MILLER, District Judge.

These related cases are before me on the petitioners' applications for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241. Petitioners are subject to final orders by the United States Immigration and Naturalization Service (INS) for deportation to countries that refuse to readmit them. They contend their indefinite detention by defendant, pending deportation, deprives them of substantive and procedural due process in violation of the Fifth Amendment. They seek release on bond upon reasonable terms. Under the circumstances of these cases, I conclude the petitioners are entitled to relief.

*Background: 98–WM–2427*

Petitioner Thien Van Vo is a Vietnamese citizen who has been a lawful permanent resident of the United States since he im-

migrated to this country in 1991 at the age of fifteen. In 1995, he was convicted of second degree sexual assault and sentenced to probation; this crime qualifies as an aggravated felony under the Immigration and Nationality Act. 8 U.S.C. § 1101(a)(43)(A). He completed his probation successfully.

On March 26, 1998, the INS took him into custody, charging in a Notice to Appear that he was removable from the United States as an alien convicted of an aggravated felony. On April 13, 1998, the parties stipulated to a bond of $30,000. At a hearing on the merits held April 30, 1998, the immigration judge found Vo was removable to Vietnam. This decision became the final administrative order when Vo waived his right to appeal.

Vo never posted the $30,000 bond. He has remained in INS custody because the government of Vietnam has not responded to the INS's request for a travel document. The declaration of Patrick O'Reilly, a staff officer for the INS, acknowledges that the government of Vietnam has not honored the INS's request for travel documents for persons in Vo's circumstances. Government Exhibit 1. This has been the case for some time. At best, the declaration gives vague hope that sometime in the future the government may negotiate a "repatriation agreement" with Vietnam.[1]

As a result of the inability of the INS to deport him, Vo has been detained beyond the ninety-day removal period, provided in 8 U.S.C. § 1231(a)(2), because he is an aggravated felon. *See* §§ 1227(a)(2)(A)(iii), 1231(a)(6).

On August 19, 1998, pursuant to INS policy, a Long Term Review Panel reviewed Vo's detention status for release. The Panel recommended continued deten-

1. No immediate action should be anticipated. Mr. O'Reilly reports that, although the United States government "is increasingly normalizing its relations with Vietnam," the return of Vietnam nationals "is a sensitive and complicated matter for both governments." Decla-

ration, ¶¶ 4, 5. In May 1998 Vietnam invited the United States to submit a proposed repatriation agreement for negotiation. As of the date of the hearing in this matter, the government had not yet done so.

tion. Then, pursuant to 8 C.F.R. § 241.4, entitled "Continued detention beyond the removal period," Vo's detention status was again reviewed by the INS, supposedly in accordance with memoranda dated February 3, 1999, and April 30, 1999, from Michael A. Pearson, Executive Associate Commissioner of the INS, concerning "Detention Procedures for Aliens Whose Immediate Repatriation is not Possible or Practicable." *See* Exhibit B to defendant's Supplemental Brief. This Section 241.4 review was conducted by two staff persons who recommended continued detention. Respondent Greene accepted that recommendation. *See* Custody Review Pursuant to 8 C.F.R. 241.4, in Vo's Administrative ("A") File.

### Background: 98–WM–2428

Petitioner Arounkon "Tay" Saynouroth is a native of Laos. He has been a lawful permanent resident of the United States since 1982, when he arrived here at age six. He was convicted of theft in 1994 and menacing in 1995; he received a one-year sentence of imprisonment for the latter conviction.[2]

In April 1997, the INS took Saynouroth into custody, charging that he was deportable based on his convictions. On June 18, 1997, an immigration judge ordered him deported; Saynouroth failed to appeal, and this order became the final administrative decision. Laos has refused to issue the necessary travel documents, and Saynouroth has remained in INS custody since April 1997.

The government has provided a second declaration of Patrick O'Reilly to the effect that Laos currently is not issuing travel documents for persons, such as Saynouroth, who departed Laos without a

passport and exit visa.[3] The likelihood of Saynouroth's deportation may be even more tenuous than that of Vo; Mr. O'Reilly's declaration indicates that no repatriation agreement with Laos is even in the discussion stage. *See* note one, *supra.*

Like Vo, Saynouroth has continued in detention beyond the removal period because of his status as an aggravated felon. *See* § 1227(a)(2)(A)(iii).

In August 1998, a custody review panel interviewed Saynouroth in connection with a review of his detention status. Saynouroth was represented by present counsel at his interview. The two panel members were unable to conclude that Saynouroth would not be likely to pose a threat to the community. *See* "A" File, submitted by respondent. This determination was reviewed by two deportation officers on September 29, 1998, and by assistant district counsel for the INS, Weldon S. Caldbeck, on October 7, 1998. It became final with the respondent's approval on October 8, 1998. Although Director Greene testified that each detainee should have his status reviewed every six months, the record before me contains no evidence that Saynouroth has been given a review pursuant to 8 C.F.R. § 241.4.

Both petitioners are confronted with the reality of detention for the foreseeable future. With the almost 20 years' detention of the Mariel Cubans[4] as a troubling precedent, they face indefinite confinement that could be a virtual life sentence.

### Issues

This case presents two issues:

Does the Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) deprive this court of jurisdiction to

---

**2.** The theft offense is an aggravated felony. § 1101(a)(43)(G).

**3.** Saynouroth and his family arrived in the United States under a refugee status.

**4.** The Mariels are Cuban citizens who came to the United States in 1980 in boat lifts from

Mariel, Cuba. They were excluded or denied admission, and detained to be returned to Cuba. Cuba has refused to accept them. *See Gisbert v. United States Attorney General,* 988 F.2d 1437 (5th Cir.1993); *Barrera–Echavarria v. Rison,* 44 F.3d 1441 (9th Cir.), *cert. denied,* 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995).

consider a habeas petition filed under 28 U.S.C. § 2241 challenging the constitutionality of a person's detention by the INS?

May legal aliens subject to non-appealable, final orders of deportation to countries that refuse to accept them be detained indefinitely without violating due process?

## Jurisdiction

The government has challenged my jurisdiction to hear this matter, asserting that IIRIRA deprived district courts of jurisdiction to consider habeas petitions filed under 28 U.S.C. § 2241. Specifically, 8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or to execute removal orders against any alien under this Act.

█ Although this language is of broad sweep, the question remains whether its intent was to deprive this court of its authority under section 2241 to hear and determine fundamental constitutional issues such as the liberty interest question presented here. The repeal of habeas jurisdiction by implication is not favored. *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 2338–39, 135 L.Ed.2d 827 (1996) (citing *Ex parte Yerger,* 75 U.S.(8 Wall.)85, 19 L.Ed. 332 (1868)). IIRIRA does not expressly repeal section 2241, and, in the absence of clear evidence of congressional intent, this court's jurisdiction pursuant to section 2241 should be maintained for the issues of this case.

█ Neither the Supreme Court nor the Tenth Circuit has decided that precise issue. *Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, —— n. 7, 119 S.Ct. 936, 942 n. 7, 142 L.Ed.2d 940 (1999); *Fernandez v. Immigration and Naturalization Serv.,* 113 F.3d 1151, 1154–55 (10th Cir.1997) (declining to consider whether Antiterrorism and Effective Death Penalty Act of 1996 left available habeas claims). *See also Jurado–Gutierrez v. Greene,* 190 F.3d 1135 n. 8 (10th Cir.1999) (expressing no opinion regarding whether 8 U.S.C. § 2252, as amended by IIRIRA, curtails traditional habeas corpus review under 28 U.S.C. § 2241). There is a split of authority among other courts, *see American–Arab,* 525 U.S. at —— n. 7, 119 S.Ct. at 942 n. 7 and cases cited therein, but I must agree with my colleagues, Judge Weinshienk and Judge Babcock, that IIRIRA does not deprive this court of jurisdiction to hear habeas petitions for alleged substantial constitutional violations. *Jurado–Gutierrez v. Greene,* 977 F.Supp. 1089, 1091 (D.Colo.1997); *Martinez v. Greene,* 28 F.Supp.2d 1275, 1279 (D.Colo.1998). The review of the constitutionality of deprivation of liberty by executive detention certainly qualifies as a substantial issue. It is the appropriate subject of this court's jurisdiction. *Phan v. Reno,* 56 F.Supp.2d 1149 (W.D.Wash. 1999) (1999 WL 521980); *Sandoval v. Reno,* 166 F.3d 225 (3d Cir.1999); *Henderson v. INS,* 157 F.3d 106 (2d Cir. 1998), *cert. denied,* —— U.S ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *Goncalves v. Reno,* 144 F.3d 110 (1st Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999).

## Discussion

In these cases, both petitioners are lawful resident aliens who have resided in this country a significant portion of their lives. Both were convicted of aggravated felonies, and both completed the sentences imposed. As a result of their convictions, petitioners were ordered deported. Both orders of deportation are final, and petitioners do not challenge them here.

Petitioners do challenge, however, the nature of their detention by respondent pending deportation. Because their native countries have thus far refused to issue the

necessary documents allowing their deportation from the United States, they have been, are, and, absent the unforeseen, will continue to be subject to indefinite detention. As a consequence, petitioners assert their challenge to their detention is constitutional rather than statutory. Petitioners rely heavily on *Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir.1981), an early Mariel Cuban case, as Tenth Circuit precedent that INS detention in the absence of a meaningful likelihood that the detainee's country will accept him is "impermissible punishment rather than detention pending deportation." *Id.* at 1387. *See also Tam v. Immigration and Naturalization Serv.*, 14 F.Supp.2d 1184, 1192 (E.D.Cal.1998) ("At some point, indefinite detention of a deportable alien caused by an unenforceable INS order must intersect with the Constitution"); *Hermanowski v. Farquharson*, 39 F.Supp.2d 148, 157 (D.R.I.1999) ("[E]ven deportable aliens enjoy some measure of the due process right to be free from unreasonable detention by the government").

· The INS response focuses on the statutory justifications for its actions, arguing that the detentions are pursuant to law and regulation, that its interpretation and enforcement of immigration laws are entitled to *Chevron* deference,[5] and that its actions, pursuant to the statute and regulations, were not violative of the petitioner's constitutional rights.[6] The government uses later Mariel Cuban cases in an attempt to distinguish *Rodriguez–Fernandez* and to argue that the statute and

regulations, particularly with periodic review of detention, are not violative of petitioner's constitutional rights. *See Barrera–Echavarria v. Rison*, 44 F.3d 1441 (9th Cir.), *cert. denied*, 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995). This includes the argument that *Rodriguez–Fernandez* is distinguishable because of significant changes in the statutes and regulations since the 1981 decision, which have led to different results even within the Tenth Circuit. *See Rodriguez v. Thornburgh*, 831 F.Supp. 810, 812 (D.Kan. 1993); *Barrios v. Thornburgh*, 754 F.Supp. 1536, 1540 (W.D.Okla.1990) (distinguishing *Rodriguez–Fernandez* and following contrary authority because of change of procedures).

■ The government's reliance on Mariel Cuban cases is misplaced as this case is readily distinguishable.[7] The Mariel Cubans are "excludable" aliens. The petitioners are "deportable" aliens. An "excludable" alien is one seeking admission to this country as a privilege. He "has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982). Excludable aliens, like the Mariel Cubans, may be denied due process rights, "including the right to be free of detention." *Gisbert v. U.S. Attorney General*, 988 F.2d at 1442. *See also Barrera–Echavarria v. Rison*, 44 F.3d at 1449–1450 (excludable alien has "no constitutional right to be paroled into

---

5. *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (the court should give deference to the agency's interpretation of the statute it administers). *Immigration and Naturalization Service v. Aguirre–Aguirre*, 526 U.S. 415, ——, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590 (1999), holds *Chevron* deference applicable to INS interpretation of relevant statutes. •

6. In its Response to Order to Show Cause, the government initially argued that petitioners had not exhausted their administrative remedies. This argument may have been based

upon Mr. Greene's mistaken interpretation that petitioners had the right to appeal to the Board of Immigration Appeals (BIA) the INS's refusal to grant bond. Mr. Greene apparently believed that this right of appeal was conferred by 8 C.F.R. § 236.1(d)(3). That regulation provides no such appeal from the director's decision under § 241.4.

7. One distinguishing feature is the difference in INS regulations between possible parole of excludable aliens (8 C.F.R. § 212.12) and continued detention of removable or deportable aliens (8 C.F.R. § 241.4). This difference is discussed *infra*, note 14.

the United States, even if the only alternative is prolonged detention").

■ Petitioners are not "excludable," as they are permanent legal residents of the United States who may be deported and are generally classified as "deportables." Once aliens are admitted, their constitutional status changes so that they enjoy rights to due process. *Landon v. Plasencia,* 103 S.Ct. at 329. Those constitutional rights include a fundamental liberty interest in being free from incarceration under the Fifth Amendment. *Phan v. Reno,* 56 F.Supp.2d 1149 (W.D.Wash.1999) (1999 WL 521980 at *4); *Hermanowski v. Farquharson,* 39 F.Supp.2d at 157; *Tam v. INS,* 14 F.Supp.2d at 1190.

If this distinction is recognized then different results would obtain depending upon the petitioners' classification. However, the recent decision of *Zadvydas v. Underdown,* 185 F.3d 279 (5th Cir.1999) expressly rejects this distinction when the alien residents, like petitioners, are subject to a final order of deportation. In that circumstance, the court concluded that there is little, if any, basis for distinguishing between deporting a resident alien and expelling an excludable alien since both are subject to irrevocable decisions to expel and their status before the plenary jurisdiction of the United States is identical. *Id.* at 296–97. The *Zadvydas* court interprets the holding of *Landon* as granting lawful resident aliens only procedural due process rights before removal, as opposed to a "broadly privileged constitutional status" in relation to excludable aliens.

I decline to follow this reasoning. The *Rodriguez–Fernandez v. Wilkinson* case remains Tenth Circuit precedent that indefinite detention of an *excludable* alien amounts to impermissible punishment. 654 F.2d at 1387. Necessarily, the same

would apply to *deportable* aliens such as petitioners. Further, although *Landon* is a procedural due process case, its broad language recognizing the constitutional right of lawfully admitted aliens to due process contains no such limitations. 103 S.Ct. at 329 ("permanent resident alien has a right to due process ..."). Similar broad language that the Fifth Amendment protects aliens from deprivation of liberty without due process (*see Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976)) should not be read to exclude protection of substantive due process rights.

Moreover, given that resident aliens have acknowledged constitutional rights, we cannot make those rights vanish by the legal expedient of a final order of deportation. In so concluding, the Fifth Circuit compounds legal fictions. Denial of constitutional rights to the excludable alien rests on the fiction that, although an alien is physically present in the United States, his "detention ... is only a continuation of exclusion." *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d at 1387. *See also Phan v. Reno,* 1999 WL 521980 at *3–4. The *Zadvydas* court builds upon this fiction by equating the deportable alien with the excludable once the deportation order is final. The court ignores the facts of admission and acquired constitutional status, classifying the resident alien as if his detention were the continuation of exclusion. I disagree. The distinction between "deportable" and "excludable" should be maintained beyond the entry of a final order of deportation.[8]

Otherwise, the heart of the government's argument is that the plenary power given our political branches to regulate immigration necessitates a limited, deferential review of the agency's action by the court. *Immigration and Naturalization*

8. The Tenth Circuit's recent opinion in *Jurado–Gutierrez v. Greene,* 190 F.3d 1135 (10th Cir.1999), albeit in a different context, suggests the distinction between excludable and deportable aliens survives removal proceedings. *See* 190 F.3d at 1152–1153 (extension of discretionary relief pursuant to 8 U.S.C. § 1182(c), as amended by AEDPA, to excludable aliens but not to deportable aliens did not violate the Equal Protection Clause).

*Serv. v. Aguirre–Aguirre,* 526 U.S. 415, ——, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590 (1999). It is beyond cavil that "the power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. U.S. ex rel Mezei,* 345 U.S. 206, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953). This "plenary power" is far reaching. "[O]ver no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993) (alteration in original; internal quotations omitted). *See also Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909). This includes the power of Congress to impose rules that would otherwise be improper if applied to citizens. *Mathews v. Diaz,* 96 S.Ct. at 1891.

The government then contends that these basic principles require that I apply the lesser standard of whether the applicable statutes and regulations advance a legitimate governmental purpose in order to survive a constitutional challenge. *See Reno v. Flores,* 113 S.Ct. at 1449. The government misapplies the law. The issues of this case are not ones of interpretation or administration of a regulation. This case concerns the deprivation of liberty, triggering the strict scrutiny standard: any infringement must be narrowly tailored to serve a compelling state interest. *Id.* at 1447; *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987); *Martinez v. Greene,* 28 F.Supp.2d at 1281. I apply that standard in my review of the substantive and procedural due process issues.

*1. Substantive Due Process*

▆ I begin with the analysis of whether the petitioner's substantive due process rights have been unlawfully infringed. If the government's actions survive substantive due process scrutiny, then I must still determine whether the requirements of procedural due process have been met. *United States v. Salerno,* 107 S.Ct. at 2101.

On the record before me [9] petitioners are both subject to at best indeterminate and at worst life detention. Plainly, the fundamental liberty interest of the due process clause is at issue. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437 (1992) (quoting *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1982); omitting alteration in quotation). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 107 S.Ct. at 2105.

As the Washington panel observed:

Petitioners' liberty interest is fundamental and deserving of due process protection.

As a general rule, government invasions of fundamental liberty interest are subject to strict scrutiny review: a deprivation will comport with due process only if it is narrowly tailored to serve a compelling government interest.

*Phan v. Reno,* 56 F.Supp.2d 1149, 1154.

When determining whether detention serves a compelling government interest, I should first decide "whether the detention is imposed for the purpose of punishment or whether it is merely incidental to another legitimate governmental purpose." *Gisbert v. United States Attorney General,* 988 F.2d at 1441 (citing *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984)). There is no evidence before me, in the record of this case or in the legislative history and text of IIRIRA, that the government intended petitioners'

---

**9.** The government has not met its burden of showing that detention is temporary pending deportation "and not simply incarceration as an alternative to departure." *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d at 1390.

detention as punishment, and the government disclaims any punitive purpose.

In the absence of any intent to punish, I will consider whether there is an alternative purpose rationally connected to the detention and whether the detention appears excessive in relation to the alternative purpose. *Gisbert,* 988 F.2d at 1441–42. There are rational reasons for continued detention of aliens convicted of an aggravated felony: "(1) ensuring the removal of aliens ordered deported; (2) preventing flight prior to deportation; and (3) protecting the public from dangerous felons." *Phan,* 56 F.Supp.2d at 1154–1155. Accordingly, the narrow issue before me is whether the detention of petitioners is excessive in relation to these purposes.

I agree with the panel of Washington judges that one must balance the likelihood of deportation against the potential danger of the petitioner and the risk that he will abscond. If it is less likely that the government can actually deport the alien, then:

> the government's interest in detaining that alien becomes less compelling and the invasion into the alien's liberty more severe. Dangerousness and flight risk are thus permissible considerations and may, in certain situations, warrant continued detention, but only if there is a realistic chance that an alien will be deported. *Detention by the INS can be lawful only in the aid of deportation. Thus, it is "excessive" to detain an alien indefinitely if deportation will never occur.*

*Id.* (emphasis added)

In both these cases, actual deportation is unlikely for the foreseeable future. Accordingly, the government's interest in detaining the petitioners is less compelling, and its detention of petitioners becomes a more severe infringement upon their liberty interests.

One could logically extend the Washington panel's reasoning to mean that when the government is unable to fulfill its de-

portation purpose, the limitation of the liberty interest cannot survive. As the subsequent decisions of the Washington court make clear, however, I should balance the ongoing interest of the government to effect deportation with the petitioners' liberty interest, their threat to the community, and the likelihood that petitioners will abscond if released. *See Sivongxay v. Reno,* 56 F.Supp.2d 1167 (W.D.Wash.1999) (1999 WL 521988); *Phan v. Smith,* 56 F.Supp.2d 1158 (W.D.Wash. 1999).

Concerning Vo, although convicted of second degree sexual assault, he has never been incarcerated but instead was sentenced to probation that he successfully completed. In addition, the government at one point agreed to release him upon bond. On the other hand, based upon the fact that he has been convicted of serious crimes, he may pose some potential danger to the community. Balancing that potential risk against his rights to liberty and the fact there is no evidence that he would be a risk of flight, I conclude that his continued indefinite detention violates his substantive due process rights as a matter of law. *Phan v. Smith,* 56 F.Supp.2d at 1159-60.

With regard to Saynouroth, although his criminal record is more extensive, he again has served the time allotted for those crimes and, were he a citizen rather than a resident alien, he would not be detained. Again weighing his liberty interest—enhanced by the indeterminate term of detention—I conclude that further detention violates his substantive due process rights as a matter of law.

My conclusions in this regard do not exclude ongoing supervision or bond requirements to serve the governmental interest of insuring removal of aliens ordered deported and preventing their flight to avoid deportation. I also note that the petitioners both asked that they be released on bond.

## 2. *Procedural Due Process*

■ Although I have determined the continued detention of petitioners is a violation of their substantive due process rights, I also consider whether the detention passes muster under a procedural due process analysis.

*Rodriguez–Fernandez* found no circumstances to justify the continued detention of an excludable alien who had committed no crime in the United States, analogizing detention pending deportation to "incarceration pending trial or other disposition of a criminal charge," concluding it is "justifiable only as a necessary, temporary measure." 654 F.2d at 1387.

The standards for pretrial detention are articulated in *United States v. Salerno*. The Supreme Court upheld provisions of the Bail Reform Act of 1984 allowing pretrial detention of persons charged with specific crimes. The Court rejected a due process challenge to the statute, concluding the government's regulatory interest in community safety outweighed an individual's liberty interest under the circumstances contemplated by the Act.[10] The Court relied upon the procedural protections of 18 U.S.C. § 3142 in holding the Act was not facially unconstitutional. 107 S.Ct. at 2103–04.

Under the Bail Reform Act, a pretrial detainee has the following rights: (1) to a finding by a neutral decision maker of probable cause to believe that the arrestee committed the charged crime; (2) to representation by counsel at the detention hearing; (3) to testify in his or her own behalf, to present information by proffer or otherwise, and to cross-examine witnesses who appear at the hearing; (4) to a judicial decision guided by statutorily enumerated factors, including the nature and circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community; (5) to require the government to prove its case by clear and convincing evidence; (6) to written findings of fact and a written statement of reasons for a decision to detain; and (7) to seek review or appeal of a detention decision. 18 U.S.C. § 3142; *Salerno,* 107 S.Ct. at 2104. Further, "[t]he Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *Salerno,* 107 S.Ct. at 2101. *See* 18 U.S.C. § 3142(f)(1).[11]

Of the procedural requirements of the Bail Reform Act listed above, it is significant that the burden remains on the government to prove by clear and convincing evidence that no condition or combination of conditions or release will reasonably assure the appearance of the criminal defendant and the safety of any other person and the community.

The regulations applicable to petitioners' detention reverse this burden. 8 C.F.R. § 241.4 permits respondent to continue to detain petitioners "beyond the removal period, as necessary, until removal from the

---

**10.** "When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat." 107 S.Ct. at 2103.

**11.** The crimes that will give rise to a rebuttable presumption that no condition or combination of conditions will reasonably assure "the safety of any other person and the community" for purposes of the Bail Reform Act include crimes of violence, felonies carrying a maximum sentence of life imprisonment or

death, and offenses for which a maximum term of imprisonment of ten years or more is prescribed by certain of the Controlled Substances Acts. 18 U.S.C. § 3142(f)(1). Any felony will support this presumption if the detainee has two or more prior convictions for any of the above offenses.

In contrast, the aggravated felonies that will subject a deportable alien to detention, while serious, are much broader in nature. These crimes include non-violent offenses such as money laundering, theft, gambling, bribery, and certain types of fraud or tax evasion. *See* 8 U.S.C. § 1101(a)(43)(A)-(U).

United States."[12] The burden is on each petitioner to demonstrate by clear and convincing evidence that his release "would not pose a danger to the community or a significant flight risk[.]" § 241.4(a). Even then, however, the decision to release the petitioners remains within the discretion of respondent. *Id.*

Further, the regulations do not contain any of the procedures cited with approval in *Salerno.* Petitioners are not guaranteed representation, a hearing, the right to testify, a neutral decision maker, or the right to appeal an adverse decision. Instead, they receive only summary review by an INS officer who fills out a form that is then forwarded to the respondent for approval.[13] Indeed, Respondent Greene acknowledged he was not a neutral decision maker.

Although the respondent has produced internal guidelines providing some measure of protection to aliens in petitioners' position, respondent admitted that the procedures were not followed in these cases. There is no evidence that respondent accorded petitioners' custody status meaningful and impartial review. "The absence of any individualized assessment or consideration of the petitioners' situations in light of the pertinent factors set forth in the regulations violates their procedural due process rights." *Phan,* 56 F.Supp.2d 1149, 1157. Perfunctory review by INS staff is not adequate process.

**12.** According to 8 U.S.C. § 1231(a)(1)(A), "the Attorney General shall remove the alien from the United States within a period of 90 days[.]"

**13.** At the hearing held on petitioners' applications for habeas relief, respondent conceded that he had not met petitioners despite the fact that he had denied their requests for release.

**14.** The government's reliance on the case law arising from the Mariel Cuban situation does not require a different result. First, as discussed above, petitioners have more rights as lawful aliens than do aliens who have not legally entered the United States. *Landon v. Plasencia,* 103 S.Ct. at 325–26.

Based upon the record before me, I conclude the procedural measures provided petitioners did not meet the requirements of due process under the Fifth Amendment.[14]

Therefore, I find that petitioners are entitled to habeas relief under the circumstances of these cases, subject to reasonable bond terms.

Accordingly, it is ordered:

1. The applications for writ of habeas corpus are granted, subject to reasonable bond terms.

2. Judgment shall enter in favor of petitioners.

3. The parties are directed to agree on bond terms consistent with 8 C.F.R. § 241.5 on or before September 10, 1999. If no agreement can be reached, bond will be set by the court.

4. Petitioners shall remain in custody pending release on bond.

5. Petitioners may have their costs, but their requests for attorneys' fees are denied.

Second, contrary to the government's arguments, *Rodriguez–Fernandez* remains a viable precedent and recognizes that the burden is on the government to demonstrate the detention is temporary. 654 F.2d at 1390.

Finally, the regulations governing the Mariel Cubans provide substantially more rights to those aliens than are available to petitioners. *See* 8 C.F.R. § 212.12 (providing for annual review by two-member panels, written recommendations, and the opportunity for the alien to submit information orally or in writing; the alien is not held to a clear and convincing standard). Thus, contrary to long established precedent, the regulations grant more procedural rights to excludable aliens than to deportable aliens.